POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone:  (310) 405-7190
Email:  jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant the Nova Scotia Health
Employees' Pension Plan and Proposed Lead Counsel for the Class*

(*additional counsel on signature page*)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| NICHOLAS MELUCCI, Individually and on behalf of all others similarly situated,<br><br>                                         Plaintiff,<br><br>        v.<br><br>CORCEPT THERAPEUTICS INCORPORATED, JOSEPH K. BELANOFF, and CHARLES ROBB,<br><br>                                         Defendants. | Case No.: 5:19-cv-01372-LHK<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS<br><br><u>CLASS ACTION</u><br><br>Date:  September 12, 2019<br>Time:  1:30 p.m.<br>Judge:  Hon. Lucy H. Koh<br>Courtroom:  8 – 4th Floor |

## **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ....................................................................................1

II.   ARGUMENT .............................................................................................................3

    A.    NSHEPP Is the "Most Adequate Plaintiff" Within the Meaning of the PSLRA and Should Be Appointed Lead Plaintiff ...............................................................3

        1.    NSHEPP Has the Largest Financial Interest in this Litigation ...............3

        2.    NSHEPP Strongly Satisfies Both the Adequacy And Typicality Requirements of Rule 23 .........................................................................5

        3.    NSHEPP Is an Institutional Investor .......................................................7

        4.    The Presumption in Favor of NSHEPP Has Not Been and Cannot Be Rebutted....................................................................................................9

III.  CONCLUSION............................................................................................................9

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS - 5:19-cv-01372-LHK

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applestein v. Medivation, Inc.*, No. C 10-00998 MHP,
2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sep. 17, 2010) ......................................................2, 4

*Armour v. Network Assocs.*,
171 F. Supp. 2d 1044 (N.D. Cal.) ..................................................................................2, 5, 6

*Bowman v. Legato Sys.*,
195 F.R.D. 655 (N.D. Cal. 2000)....................................................................................7

*Carvelli v. Ocwen Fin. Corp.*, No. 17-80500-CIV,
2017 U.S. Dist. LEXIS 222283 (S.D. Fla. July 13, 2017)................................................2, 8

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK,
2012 U.S. Dist. LEXIS 2776 (N.D. Cal. Jan. 9, 2012) ..............................................4

*Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP,
2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008)...........................................1, 4

*Felix v. Symantec Corp.*, No. C 18-02902 WHA,
2018 U.S. Dist. LEXIS 144697 (N.D. Cal. Aug. 23, 2018).........................................9

*Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP,
2012 U.S. Dist. LEXIS 28040 (C.D. Cal. Mar. 2, 2012)............................................7

*Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBF(VBKx),
2011 U.S. Dist. LEXIS 19771 (C.D. Cal. Feb. 14, 2011)...........................................7

*In re AudioEye, Inc.*, CV-15-163-TUC-DCB,
2015 U.S. Dist. LEXIS 193348 (D. Ariz. Aug. 3, 2015)............................................7

*In re Critical Path*,
156 F. Supp. 2d 1102 (N.D. Cal. 2001) .....................................................................6

*In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-2830,
2010 U.S. Dist. LEXIS 132902 (W.D. Tenn. Dec. 15, 2010) ....................................7

*In re Waste Mgmt., Inc. Sec. Litig.*,
128 F. Supp. 2d 401 (S.D. Tex. 2000) .......................................................................6

*Juliar v. SunOpta, Inc.*, 08 Civ. 933 (PAC) *et al.*,
2009 U.S. Dist. LEXIS 58118 (S.D.N.Y. Jan. 30, 2009) ...........................................8

*Knox v. Yingli Green Energy Holding Co.*,
　136 F. Supp. 3d 1159 (C.D. Cal. 2015) ........................................................................... 4

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
　1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ........................................... 1, 2, 3, 4, 5

*Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*,
　2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) ................................................ 4

*Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK,
　2011 U.S. Dist. LEXIS 16813 (N.D. Cal. Feb. 15, 2011) ................................................ 4

*Piven v. Sykes Enters., Inc.*,
　137 F. Supp. 2d 1295 (M.D. Fla. 2000) .......................................................................... 6, 9

*Randall v. Fifth St. Fin. Corp.*, No. 15-cv-7759 (LAK),
　2016 U.S. Dist. LEXIS 15719 (S.D.N.Y. Feb. 1, 2016) ................................................. 8

*Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST,
　2016 U.S. Dist. LEXIS 177714 (N.D. Cal. Dec. 22, 2016) ............................................. 2, 7

*Smajlaj v. Brocade Commc'ns Sys. Inc.*, No. C 05-02042 CRB,
　2006 WL 7348107 (N.D. Cal. Jan. 12, 2006) ................................................................. 6

### Statutes

15 U.S.C. § 78u-4(a)(3)(B)(i) ................................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................................. 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................................ 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ..................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ...................................................................................... 2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ........................................................................................ 3, 9

Private Securities Litigation Reform Act of 1995 ................................................ 1, 2, 3, 5, 7, 8, 9

### Rules

Federal Rule of Civil Procedure 23 ................................................................................... 2, 5, 6, 9

### Other

H.R. Conf. Rep. No. 104-369 (1995) ......................................................................................... 2

NSHEPP[1] respectfully submits this Memorandum of Points and Authorities in opposition to the competing lead plaintiff motions of: (i) Robert Baffa ("Baffa") (Dkt. No. 15); (ii) James L. Ferraro ("Mr. Ferraro") and the Ferraro Family Foundation, Inc. (the "Foundation") (together, the "Ferraro Group") (Dkt. No. 17); (iii) Bucks County Employees Retirement Fund ("Bucks County") (Dkt. No. 24); and (iv) Nicholas Melucci ("Melucci") (Dkt. No. 29).  For the reasons set forth below and in NSHEPP's opening brief (Dkt. No. 32), NSHEPP respectfully requests that the Court deny those motions, grant NSHEPP's motion, appoint NSHEPP as Lead Plaintiff, and appoint NSHEPP's choice of counsel, Pomerantz, as Lead Counsel.

## I.    PRELIMINARY STATEMENT

This is a federal class action securities fraud lawsuit against Corcept and certain of its officers, where a lead plaintiff must be appointed.  The PSLRA, which governs that process, instructs the Court to appoint the "most adequate plaintiff," defined by the statute as "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).

Three primary criteria guide the Court's inquiry in determining which lead plaintiff movant is entitled to the presumption that it is the "most adequate plaintiff" within the meaning of the statute.  First, the Court determines which movant has the "largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  For Exchange Act §10(b) claims, courts frequently assess financial interest under the four factors articulated in *Lax v. First Merchants Acceptance Corp*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *17-*18 (N.D. Ill. Aug. 6, 1997).  While estimated losses are often highlighted, courts frequently emphasize net shares purchased (*i.e.*, retained shares) at the end of the Class Period as the most significant metric.  *See*, *e.g.*, *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *10-*11 (N.D. Cal. Aug. 22, 2008) ("When calculating the

---

[1] Unless otherwise specified, all capitalized terms herein were defined in NSHEPP's moving brief (Dkt. No. 32).

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS - 5:19-cv-01372-LHK

greatest financial interest, the court adopts the retained share methodology, which primarily looks to shares bought during the class period that are retained at the end of the class period."); *Applestein v. Medivation, Inc.*, No. C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255, at *6 (N.D. Cal. Sep. 17, 2010) (same). Second, the Court evaluates whether each movant "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure"—specifically, Rule 23(a)(3) typicality and Rule 23(a)(4) adequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). *See, e.g., Armour v. Network Assocs.*, 171 F. Supp. 2d 1044, 1051 (N.D. Cal.) ("[T]he third and fourth requirements of Rule 23—typicality and adequacy—are the key factors for a court's lead plaintiff determination."). Third, the court must assess the nature of each competing movant. In enacting the PSLRA, Congress intended to "increas[e] the role of institutional investors in class actions" in order to "benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at *34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733. To this end, courts **strongly** prefer appointment of institutional investors to lead complex securities class actions, even appointing them over non-institutional movants with greater financial interests. *See*, *e.g.*, *Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST, 2016 U.S. Dist. LEXIS 177714, at *7 (N.D. Cal. Dec. 22, 2016); *Carvelli v. Ocwen Fin. Corp.*, No. 17-80500-CIV, 2017 U.S. Dist. LEXIS 222283, at *16 (S.D. Fla. July 13, 2017).

NSHEPP satisfies all of the foregoing criteria to be entitled to the statutory presumption as the "most adequate plaintiff." First, NSHEPP has the largest financial interest in this litigation, as measured by the 72,000 shares it retained at the end of the Class Period, when Defendants' fraud was revealed to the market—more than any competing movant and indeed more than all other movants combined. Aside from the Ferraro Group, which claims the largest purported loss but only retained 25,000 shares at the end of the Class Period, the other competing movants allege only a minimal financial interest. Second, NSHEPP readily satisfies the adequacy and typicality requirements of Rule 23. NSHEPP, like all Class members, purchased Corcept securities at prices artificially inflated by Defendants' alleged fraud, was

2

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS - 5:19-cv-01372-LHK

damaged upon the disclosure of those misrepresentations or omissions, and is pursuing the same claims based on the same legal theories arising from the same events and course of conduct. Unlike competing movants, NSHEPP has detailed its composition, structure, governance, membership, and assets, as well as its relationship with Pomerantz, its chosen counsel.  No other movant made a comparable showing.  Finally, NSHEPP is a sophisticated institutional investor, the type of paradigmatic lead plaintiff that Congress intended to serve as class representatives when it enacted the PSLRA.  While one other movant, Bucks County, is also an institutional investor, its financial interest in this litigation is minimal compared to NSHEPP's, and it has entirely failed to demonstrate its adequacy.  Accordingly, Bucks County does not satisfy the other requisite statutory criteria and is disqualified from consideration as the "most adequate plaintiff."

Having satisfied all of the foregoing criteria, NSHEPP is entitled to the statutory presumption that it is the "most adequate plaintiff" of the class.  This presumption may only be rebutted upon proof that NSHEPP is inadequate to represent the class.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).   Here, NSHEPP respectfully submits that no such proof exists.  NSHEPP respectfully submits that it should be appointed Lead Plaintiff, and that its chosen counsel, Pomerantz, should be appointed Lead Counsel.

## II.    ARGUMENT

### A.    NSHEPP Is the "Most Adequate Plaintiff" Within the Meaning of the PSLRA and Should Be Appointed Lead Plaintiff

#### 1.    NSHEPP Has the Largest Financial Interest in this Litigation

The first criterion for the PSLRA's "most adequate plaintiff" presumption is having "the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  For Exchange Act §10(b) claims, courts frequently assess financial interest based upon the four *Lax* factors: (1) shares purchased during the class period; (2) net shares purchased during the class period ("retained shares"); (3) net funds expended during the class period; and (4) approximate losses suffered.  No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *17-*18 (N.D. Ill. Aug. 6,

3

1997).   In accord with courts nationwide, these so-called *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District.   *See*, *e.g.*, *Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013 U.S. Dist. LEXIS 29876, at *18 (N.D. Cal. Mar. 4, 2013) ("District courts commonly refer to the four-factor [*Lax*] test, which considers (1) total shares purchased, (2) net shares purchased, (3) net funds expended, and (4) approximate losses suffered."); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK, 2012 U.S. Dist. LEXIS 2776, at *10-*11 (N.D. Cal. Jan. 9, 2012) (same); *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (same).

Significantly, while some courts focus on the *Lax* factor of estimated losses, courts often emphasize the number of shares retained at the end of the class period in assessing financial interest.   *See*, *e.g.*, *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *10 ("When calculating the greatest financial interest, the court adopts the retained share methodology, which primarily looks to shares bought during the class period that are retained at the end of the class period."); *Applestein*, 2010 U.S. Dist. LEXIS 98255, at *6 (same); *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813, at *20-*22 (N.D. Cal. Feb. 15, 2011) (same).   Under this analysis, NSHEPP's financial interest, assessed in terms of shares retained at the end of the Class Period overshadows those of the competing movants:

| Movant | Shares Retained at End of Class Period |
|---|---|
| NSHEPP | 72,000 |
| James L. Ferraro | 25,000 |
| Bucks County | 10,562 |
| Robert Baffa | 1,000 |
| The Ferraro Family Foundation, Inc. | 0 |
| Nicholas Melucci | 0 |

As the chart illustrates, under a retained shares analysis, NSHEPP has the largest financial interest in this action by a significant margin, having retained more shares at the end of the Class Period than all other movants ***combined***.   Mr. Ferraro, one member of the Ferraro

4

Group, retained the second-most shares at the end of the alleged Class Period, but only retained 25,000 shares, roughly one-third as many as NSHEPP.  Following Mr. Ferraro is Bucks County, which retained only 10,562 shares – a fraction of NSHEPP's retained shares.  The remaining three movants retained few or zero shares at the end of the Class Period.  Also, looking to the other *Lax* factors, NSHEPP has articulated the second-highest loss, behind the Ferraro Group.  All other movants noticeably lag behind on that metric as well.

The PSLRA's purpose in appointing the movant with the largest financial interest in the litigation as lead plaintiff is to ensure that the class is represented by an investor "with the incentive to actively represent the class in obtaining a recovery for the defendants' alleged securities violations." *Armour*, 171 F. Supp. 2d at 1051.  By retaining the most shares through the end of the Class Period, and through all alleged corrective stock drops, NSHEPP satisfies that purpose.  Having the largest financial interest in this litigation within the meaning of the PSLRA, NSHEPP thus satisfies the first criterion for the statutory "most adequate plaintiff" presumption.

### 2.    NSHEPP Strongly Satisfies Both the Adequacy And Typicality Requirements of Rule 23

The second criterion for the "most adequate plaintiff" presumption is satisfying the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  For lead plaintiff purposes, only the Rule 23(a)(3) typicality and Rule 23(a)(4) adequacy requirements are relevant.  *Armour*, 171 F. Supp. 2d at 1051 ("[T]he third and fourth requirements of Rule 23—typicality and adequacy— are the key factors for a court's lead plaintiff determination.").

NSHEPP strongly satisfies both the typicality and adequacy requirements of Rule 23.  *See* Dkt. No. 32 at 9-12.  With respect to adequacy, NSHEPP has provided detailed information concerning its composition, structure, governance, membership, and assets under management.  *See id.* at 7-8.  In addition, it has already demonstrated its ability to pursue securities fraud claims while supervising its choice of counsel, Pomerantz, which is currently litigating NSHEPP's claims, and those of dozens of other institutional investors, to recover investment

5

losses stemming from BP's 2010 Gulf oil spill within Multidistrict Litigation 2185, *In re BP p.l.c. Securities Litigation*, No. 4:10-md-02185 (S.D. Tex.) (the "BP Securities Litigation"). NSHEPP also readily satisfies Rule 23(a)(4) typicality. It is pursuing the same legal claims, on the same theories of liability, as all other class members, and it is subject to no unique defenses.

No other movant has comparably demonstrated its satisfaction of Rule 23, beyond merely submitting a shareholder certification. *See* Dkt. Nos. 16-3, 19-2, 25-3, 31-3. Courts often deny motions that lack detailed information as to a movant's adequacy to represent the class and supervise their chosen counsel. *See*, *e.g.*, *Smajlaj v. Brocade Commc'ns Sys. Inc.*, No. C 05-02042 CRB, 2006 WL 7348107, at *11-*12 (N.D. Cal. Jan. 12, 2006) (rejecting investor's motion for appointment as lead plaintiff, despite a presumption in its favor from having the greatest financial interest in the litigation, after concluding that it "will not adequately represent the interests of the plaintiff class" where questions existed as to, *inter alia*, its "authority, transparency, and structure"); *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 425 (S.D. Tex. 2000) (rejecting application of shareholder investor group that "provided no meaningful information" regarding several members); *Piven v. Sykes Enters., Inc.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000) (finding movant inadequate to serve as lead plaintiff where it "has not proffered any information regarding its identity, resources, and experience").

Given the lack of information as to the qualifications and experience of the competing movants, NSHEPP should be appointed to serve as lead plaintiff. Denying motions by class members who lack relevant experience is particularly appropriate where a qualified institutional investor, like NSHEPP, stands ready to serve as lead plaintiff. *See*, *e.g.*, *In re Critical Path*, 156 F. Supp. 2d 1102, 1109 (N.D. Cal. 2001) ("[W]hile it may be true that losing a high percentage of one's net worth due to an alleged fraud contributes to one's desire to prosecute a lawsuit against the wrongdoer, that desire is no substitute for the experience and resources of an institutional investor with, presumably, an in-house legal team and experience in the securities business."); *Armour*, 171 F. Supp. 2d at 1048 ("The underlying assumption of the PSLRA's

lead plaintiff provisions is that the greater resources and litigation experience possessed by institutional investors makes them better equipped to serve as lead plaintiffs in securities class actions.").

### 3.    NSHEPP Is an Institutional Investor

Third, NSHEPP is exactly the type of institutional investor that Congress intended to serve as lead plaintiffs under the PSLRA, which Congress enacted to ensure that federal securities class actions are led by sophisticated institutional investors, capable of overseeing their counsel and vigorously pursuing recovery on behalf classes of investors.  Courts in the Ninth Circuit have consistently advanced this important legislative goal by endorsing the appointment of institutional investors as lead plaintiffs in PSLRA actions.  *See*, *e.g.*, *Shenwick*, 2016 U.S. Dist. LEXIS 177714, at *7 ("as an institutional investor, [movant] is likely to be an effective lead plaintiff"); *Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP (PJWx), 2012 U.S. Dist. LEXIS 28040, at *8 (C.D. Cal. Mar. 2, 2012) (appointing institutional investor as lead plaintiff, finding it to be "'exactly the type of sophisticated market participant[] Congress intended to take on the role of lead plaintiff following the PSLRA's reforms.'") (quoting *In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-2830, 2010 U.S. Dist. LEXIS 132902, at *8 (W.D. Tenn. Dec. 15, 2010)); *In re AudioEye, Inc.*, CV-15-163-TUC-DCB, 2015 U.S. Dist. LEXIS 193348, at *13 (D. Ariz. Aug. 3, 2015) (appointing as lead plaintiff "an institutional investor, which is precisely the kind of investor that Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions"); *Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBF(VBKx), 2011 U.S. Dist. LEXIS 19771, at *11-14 (C.D. Cal. Feb. 14, 2011) ("[T]he PSLRA's legislative history expressed a preference for institutional investors . . . to serve as lead plaintiffs.") (citing H.R. Conf. Rep. No. 104-369, at 34, reprinted in 1995 U.S.C.A.A.N. at 733)); *Bowman v. Legato Sys.*, 195 F.R.D. 655, 657 (N.D. Cal. 2000) ("There is no doubt that Detroit is eligible—as a large institutional investor with significant monetary losses, Detroit is exactly the type of lead

plaintiff envisioned by Congress when it instituted the lead plaintiff requirements discussed above by enacting the [PSLRA].").

This codified preference for institutional investors is so strong that courts have appointed institutional investors as lead plaintiffs over competing non-institutional movants alleging potentially greater financial interests. *See*, *e.g.*, *Carvelli v. Ocwen Fin. Corp.*, No. 17-80500-CIV, 2017 U.S. Dist. LEXIS 222283, at *16 (S.D. Fla. July 13, 2017) ("This Court declines to apply the presumption typically afforded the 'largest financial interest.'  Rather, this Court will apply the 'presumption inherent in Congress' enactment of the PSLRA that institutional investors serve as better lead plaintiffs.'") (quoting *Juliar v. SunOpta, Inc.*, 08 Civ. 933 (PAC) *et al.*, 2009 U.S. Dist. LEXIS 58118, at *8 (S.D.N.Y. Jan. 30, 2009)); *Randall v. Fifth St. Fin. Corp.*, No. 15-cv-7759 (LAK), 2016 U.S. Dist. LEXIS 15719, at *9 (S.D.N.Y. Feb. 1, 2016) (court "declin[ing] to untangle the web of competing accounting and valuation methods at issue" and "bas[ing] its decision . . . on the Congressional preference for institutional lead plaintiffs in private securities class actions.").

As an institutional investor, NSHEPP is precisely the type of lead plaintiff that Congress intended courts to appoint under the PSLRA.  It is sophisticated, has significant assets under management of over CAD $8 billion, and has already demonstrated its ability to pursue securities fraud claims while supervising its choice of counsel, Pomerantz, which is currently litigating NSHEPP's claims in the BP Securities Litigation.  It is crucial that this type of sophisticated investor with relevant prior experience serve as Lead Plaintiff in this action, which concerns a massive fraud perpetrated upon Corcept stockholders, wiping out approximately $157 million in shareholder value.  As the litigation moves forward, the presence of an institutional investor as Lead Plaintiff would reassure other institutional investors in the putative class that the litigation is under the direction of a sophisticated party that is able to supervise counsel to prosecute the action efficiently and maximize the class's recovery.  NSHEPP's involvement is also likely to minimize the number of opt-out actions filed by institutional investors, also to the benefit of the class.

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS - 5:19-cv-01372-LHK

The only other institutional investor that moved for lead plaintiff appointment, Bucks County, is not entitled to the statutory presumption that it is the "most adequate plaintiff." First, Bucks County does not meet the "largest financial interest," having retained under 11,000 shares of Corcept stock at the end of the Class Period, compared to NSHEPP's 72,000 retained shares, and having articulated a lower estimated loss. Second, Bucks County does not meet the Rule 23 criteria of adequacy and typicality, having failed to provide any information whatsoever as to its composition, structure, governance, membership, or assets under management—in stark contrast to NSHEPP's detailed proffer in this regard. For these reasons, Bucks County is disqualified from appointment as Lead Plaintiff, irrespective of its status as an institutional investor. *See Piven*, 137 F. Supp. 2d at 1305 (denying motion by institutional investor that failed to "proffer[] any information regarding its identity, resources, and experience").

### 4. The Presumption in Favor of NSHEPP Has Not Been and Cannot Be Rebutted

To overcome the strong presumption entitling NSHEPP to appointment as Lead Plaintiff, the PSLRA requires "proof" of its inadequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). *See also Felix v. Symantec Corp.*, No. C 18-02902 WHA, 2018 U.S. Dist. LEXIS 144697, at *6 (N.D. Cal. Aug. 23, 2018). No such proof exists and any speculation to the contrary should be flatly rejected. Indeed, both NSHEPP and its choice of counsel, Pomerantz, with whom it has had an over five-year attorney-client relationship, readily pass muster.

## III.    CONCLUSION

For the foregoing reasons, NSHEPP respectfully requests that the Court issue an Order: (1) appointing NSHEPP as Lead Plaintiff for the Class; and (2) approving its selection of Pomerantz as Lead Counsel for the Class.

Dated: May 28, 2019                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*

9

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone:  (310) 405-7190
Email:  jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*admitted pro hac vice*)
Matthew L. Tuccillo
(*admitted pro hac vice*)
J. Alexander Hood II
(*admitted pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: mltuccillo@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
(*admitted pro hac vice*)
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff Movant the Nova Scotia Health Employees' Pension Plan and Proposed Lead Counsel for the Class*

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS - 5:19-cv-01372-LHK

**PROOF OF SERVICE**

I hereby certify that on May 28, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Jennifer Pafiti*
Jennifer Pafiti

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS - 5:19-cv-01372-LHK