# EXHIBIT A

POMERANTZ LLP
Matthew L. Tuccillo
(*admitted pro hac vice*)
Jeremy A. Lieberman
(*admitted pro hac vice*)
J. Alexander Hood II
(*admitted pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: mltuccillo@pomlaw.com
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant the Nova Scotia Health*
*Employees' Pension Plan and Proposed Lead Counsel for the Class*

(*additional counsel on signature page*)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| NICHOLAS MELUCCI, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CORCEPT THERAPEUTICS INCORPORATED, JOSEPH K. BELANOFF, and CHARLES ROBB,<br><br>Defendants. | Case No.: 5:19-cv-01372-LHK<br><br>[PROPOSED] REPLY MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL<br><br><u>CLASS ACTION</u><br><br>Date:  September 12, 2019<br>Time:  1:30 p.m.<br>Judge:  Hon. Lucy H. Koh<br>Courtroom:  8 – 4th Floor |

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................................1

II.   ARGUMENT ...............................................................................................................5

    A.    NSHEPP Has The "Largest Financial Interest" Under The PSLRA Due To Its Retaining The Most Shares At The End Of The Class Period..............................5

    B.    Bucks County's Belated Argument Lacks Any Merit ...........................................8

III.  CONCLUSION...........................................................................................................10

[PROPOSED] REPLY MEMORANDUM IN FURTHER SUPPORT OF
THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 5:19-cv-01372-LHK

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Applestein v. Medivation, Inc.*, No. C 10-00998 MHP,
   2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sep. 17, 2010) ................................................. 3, 5, 7

*Bodri v. GoPro, Inc.*, No. 16-cv-00232-JST,
   2016 U.S. Dist. LEXIS 57559 (N.D. Cal. Apr. 28, 2016) ........................................................ 7

*Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*, No. 13 C 2111,
   2013 U.S. Dist. LEXIS 106246 (N.D. Ill. July 30, 2013) ........................................................ 7

*Doshi v. Gen. Cable*, No. 2:17-025,
   2017 U.S. Dist. LEXIS 184254 (E.D. Ky. Nov. 7, 2017) ................................................. 7, 8, 9

*Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP,
   2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008) ............................................... 2, 4, 5

*Fialkov v. Celladon Corp.*, No. 15-cv-1458 AJB (DHB),
   2015 U.S. Dist. LEXIS 192311 (S.D. Cal. Dec. 9, 2015) ................................................. 4, 6, 7

*Foster v. Maxwell Techs., Inc.*, No. 13-cv-00580-BEN-RBB,
   2013 U.S. Dist. LEXIS 154538 (S.D. Cal. Oct. 24, 2013) ........................................................ 5

*Mulligan v. Impax Labs., Inc.*, No. C-13-1037 EMC,
   2013 U.S. Dist. LEXIS 93119 (N.D. Cal. July 2, 2013) ........................................................... 7

*Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB,
   2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) .......................................................... 7

*Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK,
   2011 U.S. Dist. LEXIS 16813 (N.D. Cal. Feb. 15, 2011) ..................................................... 3, 5

*Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx),
   2006 WL 6886020 (C.D. Cal. May 2, 2006) ........................................................................... 8

*Schueneman v. Arena Pharm., Inc.*, No. 10-cv-1959 BTM (BLM),
   2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8, 2011) .......................................................... 5

*Takeda v. Turbodyne Techs., Inc.*,
   67 F. Supp. 2d 1129 (C.D. Cal. 1999) ..................................................................................... 6

**Statutes**

15 U.S.C. §78u-4(a)(3)(B)(iii) ........................................................................................................ 2

ii

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc)..................................................................................................2, 3

Private Securities Litigation Reform Act of 1995 ("PSLRA").......................................... 2, 3, 4, 5

PSLRA, 15 U.S.C. §78u-4(a)(3)(B)........................................................................................... 1, 9

PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(i)........................................................................................ 2, 8

PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) ......................................................................... 5, 7

PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc) ............................................................................... 8

**<u>Rules</u>**

Fed. R. Civ. P. 23................................................................................................. 2, 3, 6, 8, 9

[PROPOSED] REPLY MEMORANDUM IN FURTHER SUPPORT OF
THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 5:19-cv-01372-LHK

NSHEPP respectfully submits this Reply Memorandum in further support of its Lead Plaintiff Motion (Dkt. No. 32).[1]  For the additional reasons below, as well as those previously expressed in its prior filings (Dkt. Nos. 32, 51, 57), NSHEPP respectfully requests that it be appointed lead plaintiff and that its choice of counsel, Pomerantz LLP, be appointed lead counsel.

## I.    PRELIMINARY STATEMENT

NSHEPP's position has been consistent throughout these proceedings.  NSHEPP believes that it is important for an institutional investor to lead this litigation and that NSHEPP itself is the "most adequate plaintiff" "most capable of adequately representing the interests of class members" within the meaning of the PSLRA, 15 U.S.C. §78u-4(a)(3)(B).  Thus, NSHEPP has consistently sought to be appointed as a lead plaintiff, in each filing it made to this Court.  *See* Dkt. Nos. 32 (opening brief), 51 (opposition brief), 54 (proposed stipulation), 57 (letter to the Court).  In doing so, NSHEPP has forthrightly outlined for the Court its assets, membership, governance, relationship with counsel, and experience overseeing comparable securities fraud litigation.  *See* Dkt. No. 32 at 7-8, 11-12; Dkt. No. 51 at 2-3, 5-6; Dkt. No. 57 at 1 and Exh. A.

Bucks County Employees Retirement Fund ("Bucks County") was the *first* competing movant to withdraw its motion and cease trying to be appointed lead plaintiff (*see* Dkt. No. 42), ceding that role to either NSHEPP, an institutional investor, or the Ferraro Group, an amalgam of a retail investor, Mr. Ferraro, and a Foundation about which little has been disclosed.  Thereafter, the two other retail investors, Mr. Baffa and Mr. Melucci, either withdrew their competing motions or ceased any pursuit thereof.  Nevertheless, NSHEPP's opposition brief (Dkt. No. 51) explained for the Court why Bucks County, Mr. Baffa, and Mr. Melucci were unsuitable for the role of lead plaintiff.  Bucks County, like Mr. Baffa and Mr. Melucci, failed to file any opposition brief or to raise *any* concern regarding NSHEPP's ability to serve as lead plaintiff.

At that point, NSHEPP's lead plaintiff motion was contested by only the Ferraro Group, whose members, Mr. Ferraro and the Foundation, claimed a larger aggregated transactional loss,

---

[1]    Unless otherwise specified, all capitalized terms herein were defined in NSHEPP's moving and opposition briefs (Dkt. Nos. 32, 51).

but retained significantly fewer Corcept shares at the end of the Class Period and displayed weaknesses in satisfying Fed. R. Civ. P. 23 and 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). In contrast to NSHEPP's detailed proffer under Fed. R. Civ. P. 23, *no* information was provided to the Court as to the Foundation's membership, assets, decision-making, and litigation experience. *See* Dkt. No. 51 at 3, 5-7; *see also* Dkt. No. 57. Moreover, all members of the Ferraro Group apparently lack *any* experience overseeing comparable securities fraud litigation. *Id.*

Under these circumstances, NSHEPP entered into the proposed leadership stipulation with the Ferraro Group, both to eliminate the risk that NSHEPP might not be appointed as a lead plaintiff, a scenario that would deprive both NSHEPP and the class of Corcept investors of having a sophisticated, experienced institutional investor – the paradigmatic lead plaintiff preferred by Congress in eacting the PSLRA (*see* Dkt. No. 51 at 7-9) – oversee this class action lawsuit, and to alleviate the judicial burden of the Court's having to resolve competing motions, whose continued pendency would further delay active litigation of the important claims at issue. Contrary to Bucks County's belated argument, NSHEPP's subnmission of the stipulation was not a "reversal," but rather, a pragmatic proposal to secure NSHEPP a lead position through efficient resolution of contested motions. With NSHEPP at the helm as a lead plaintiff, the Ferraro Group's Fed. R. Civ. P. 23 adequacy issues would have diminished in importance as a co-lead.

After the stipulation was rejected, NSHEPP reiterated its desire to serve as lead plaintiff. *See* Dkt. No. 57. NSHEPP's prior submissions demonstrated it to be the "most adequate plaintiff" "most capable of adequately representing the interess of class members" under the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(i). *See* Dkt. No. 32 at 3-4, 8-12; Dkt. No. 51 at 2-9; Dkt. No. 57 at 1, 3. First, as the Ferraro Group *concedes* (*see* Dkt. No. 50 at 4), "The Ninth Circuit has yet to propose one method for calculating a plaintiff's financial stake." Under 15 U.S.C. §78u-4(a)(3)(B)(iii), NSHEPP claims the "largest financial interest" based on retaining, by far, the most Corcept shares at the end of the Class Period (72,000 shares, compared to 25,000 retained by the Ferraro Group and 10,562 retained by Bucks County) – a metric *widely embraced* by Ninth Circuit courts. *See* Dkt. No. 32 at 3, 9; Dkt. No. 51 at 4-5 (citing *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-

06140 MHP, 2008 U.S. Dist. LEXIS 64633, at \*10-\*11 (N.D. Cal. Aug. 22, 2008) ("When calculating the greatest financial interest, the court adopts the retained share methodology, which primarily looks to shares bought during the class period that are retained at the end of the class period."); *Applestein v. Medivation, Inc.*, No. C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255, at \*6 (N.D. Cal. Sep. 17, 2010) (same); *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813, at \*20-\*22 (N.D. Cal. Feb. 15, 2011) (same)).  Second, NSHEPP was the *only* movant to provide a *robust proffer* in satisfaction of Fed. R. Civ. P. 23 and 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc), disclosing, *inter alia*, its assets (over CAD $8 billion), membership (30,000 active members and 12,300 pensioners/former workers), governance (Chief Executive Officer that oversees day-to-day operations and this litigation and an 8-member Board of Trustees that oversees overall fund operations), relationship with counsel (five-year attorney-client relationship), and experience overseeing comparable securities fraud litigation (lead plaintiff overseeing securities fraud class action, *Edwards v. McDermott Int'l, Inc.*, No. 4:18-cv-4330 (S.D. Tex.) and opt-out litigant pursuing individual securities fraud claims that have survived three motions to dismiss in *In re BP p.l.c. Sec. Litig.*, MDL 2185 (S.D. Tex.)).  *See* Dkt. No. 32 at 7-8, 11-12; Dkt. No. 51 at 2-3, 5-6; Dkt. No. 57 at 1 and Exh. A.  Third, as a sophisticated institutional investor experienced in overseeing securities fraud litigation, NSHEPP is *exactly* the type of lead plaintiff that Congress envisioned in enacting the PSLRA and that Ninth Circuit Courts *preferentially appoint*.  *See* Dkt. No. 32 at 11-12 (collecting cases); Dkt. No. 51 at 7-8 (same); Dkt. No 57 at 3 (same).

The Ferraro Group's opposition, aside from pointing to different metrics to highlight its members' financial interest in the litigation, raised just one argument against NSHEPP's appointment as lead plaintiff, claiming that retained shares are "less useful analytical tools" in a securities fraud lawsuit involving multiple alleged corrective disclosures.  *See* Dkt. No. 50 at 5-6.  While predictable, given that the Ferraro Group's members *concede* that they sold *nearly 82% of their Corcept stock* either before any alleged corrective disclosure or after the first of three corrective disclosures occurred (*see id.* at 6), this argument ignores the ample body of case law

3

from within this Circuit "adopt[ing] the retained share methodology, which primarily looks to shares bought during the class period that are retained at the end of the class period," *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633 at \*10, whereby courts will appoint as lead plaintiff the movant that retained the greatest number of shares at the end of the class period, even if other movants purchased more shares overall, held more shares past the first of a series of corrective disclosures, and articulated a greater recoverable loss. *See, e.g., Fialkov v. Celladon Corp.*, No. 15-cv-1458 AJB (DHB), 2015 U.S. Dist. LEXIS 192311, at \*13-\*16 (S.D. Cal. Dec. 9, 2015). These courts have wisely deduced that a lead plaintiff movant who held its shares through the class period end is best incentivized to pursue recovery based the full set of corrective disclosures, as the "most capable of adequately representing the interests of class members" within the meaning of the PSLRA. NSHEPP respectfully urges the Court to reject the Ferraro Group's argument.

Bucks County belatedly raised the only other argument against NSHEPP's appointment. Before it did so, Bucks County **withdrew** its lead plaintiff motion – after seeing *only* NSHEPP's and the Ferraro Group's *opening* briefs – thereby ceding leadership of this litigation to them. *See* Dkt. No. 42. It watched on the sidelines as deadlines for opposition and reply briefs passed, never once raising any concern about NSHEPP as a proposed lead plaintiff, even after NSHEPP filed a proposed stipulation to be so appointed, alongside the Ferraro Group. Instead, another month elapsed, with Bucks County still conspicuously absent from the proceedings, before the Court rejected the stipulation, due to an expressed desire for a single lead plaintiff. Only then did Bucks County awaken from its slumber, walk out onto the balcony of its glass house, and cast a stone at NSHEPP and the Ferraro Group for their purported "ever-changing positions." *See* Dkt. No. 58. Citing just a single case, inapposite for the intended proposition, where two unrelated groups encompassing a hodgepodge of unrelated investors – seven individuals, a married couple, and a manuscript museum purportedly acting through its founder/CEO – morphed into a mega-group, represented by three law firms, without any involvement by the investors themselves (*id.* at 2-3), Bucks County insinuated, speculatively, that NHSEPP's proposed leadership stipulation was the product of similar unsupervised decision-making by NSHEPP's counsel, Pomerantz. *Id.*

[PROPOSED] REPLY MEMORANDUM IN FURTHER SUPPORT OF
THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 5:19-cv-01372-LHK

This meritless argument is readily refuted by NSHEPP's Supplemental Declaration, submitted herewith, which NSHEPP's CEO executed within *one day* of Bucks County's filing. It attests, *inter alia*, to NSHEPP's ongoing monitoring of these proceedings, its repeated consultation with its chosen counsel, Pomerantz, its motivation for entering into the leadership stipulation and its express authorization to do so, and its express authorization to continue to pursue a lead plaintiff appointment after the stipulation was rejected. Given its argument, Bucks County's failure to submit a similar declaration, despite its own dramatic change of position, is noteworthy. Thus, NSHEPP respectfully urges the Court to reject Bucks County's argument.

For these foregoing reasons, set forth in greater detail below, and those previously presented to the Court (*see* Dkt. Nos. 32, 51, 57), NSHEPP respectfully requests that the Court grant NSHEPP's lead plaintiff motion in its entirety and reject the competing motions filed by the Ferraro Group (Dkt. No. 17) and by Bucks County (Dkt. No. 24).

## II.    ARGUMENT

### A.    NSHEPP Has The "Largest Financial Interest" Under The PSLRA Due To Its Retaining The Most Shares At The End Of The Class Period

As the Ferraro Group concedes, "The Ninth Circuit has yet to propose one method for calculating a plaintiff's financial stake." *See* Dkt. No. 50 at 4. NSHEPP has argued that retained shares are an appropriate metric, widely-accepted by courts within the Ninth Circuit, by which to determine which lead plaintiff movant has the "largest financial interest in the relief sought by the class" within the meaning of the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(iii)(bb). *See* Dkt. No. 32 at 3, 9; Dkt. No. 51 at 4-5 (citing *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633 at *10-*11 ("When calculating the greatest financial interest, the court adopts the retained share methodology, which primarily looks to shares bought during the class period that are retained at the end of the class period."); *Applestein*, 2010 U.S. Dist. LEXIS 98255 at *6 (same); *Perlmutter*, 2011 U.S. Dist. LEXIS 16813 at *20-*22 (same)). *See also Foster v. Maxwell Techs., Inc.*, No. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538, at *10 (S.D. Cal. Oct. 24, 2013) (same); *Schueneman v. Arena Pharm., Inc.*, No. 10-cv-1959 BTM (BLM), 2011 U.S. Dist. LEXIS 87373,

at *14 (S.D. Cal. Aug. 8, 2011) (same).  The Ferraro Group has *not contested* this point or otherwise addressed NSHEPP's cited authority in support thereof, in *any* of its numerous filings, including the two that it made after the leadership stipulation's rejection.  *See* Dkt. Nos. 17 (opening brief), 50 (opposition brief), 56 (letter to the Court), 60-1 (proposed sur-reply).

Instead, the Ferraro Group's opposition argued only that, in this specific case, net shares held (*i.e.*, retained shares) at the end of the Class Period "would be an inappropriate measurement of financial interest because there were multiple corrective disclosures."  *See* Dkt. No. 50 at 5. This overbroad assertion disregards the purpose of the PSLRA's "largest financial interest" requirement and the PSLRA's overlay of Rule 23 requirements, which together serve to ensure that a lead plaintiff has "a sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1137 (C.D. Cal. 1999). Simply put, a lead plaintiff should ideally be fully incentivized to pursue recovery on behalf of *all* class members, arising from losses derived from *all* alleged corrective disclosures.  The Ferraro Group *concedes* that it sold *nearly 82%* of its Corcept stock either before any corrective disclosure or after the first of three alleged corrective disclosures.  *See* Dkt. No. 50 at 6.  Its opposition even highlights its view that the first such disclosure (a SIRF report) is superior to the ones that followed because it "caused the largest drop" – a point fundamentally irrelevant, for instance, to a class member whose damages arose only from purchases of Corcept stock after that first drop but before the correctives that followed.

Thus, in cases involving multiple corrective disclosures, courts often decline to appoint as lead plaintiffs movants who incurred damages primarily in connection with an early corrective disclosure and who did not hold the most shares at the end of the class period – even where those movants purchased more shares overall, held more shares past the first corrective disclosure, and articulated purportedly greater losses.  *Fialkov v. Celladon Corp.*, No. 15-cv-1458 AJB (DHB), 2015 U.S. Dist. LEXIS 192311, at *13-*16 (S.D. Cal. Dec. 9, 2015), is instructive.  There, the court weighed whether to appoint as lead plaintiff an investor group consisting of an individual and a trust (the "Greenfields"), which had purchased most total shares, held more shares past the

[PROPOSED] REPLY MEMORANDUM IN FURTHER SUPPORT OF
THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 5:19-cv-01372-LHK

first corrective disclosure, and claimed a larger recoverable loss, or an individual investor ("Tadros"), who purchased fewer shares, but held them through all corrective disclosures and therefore held more shares at the end of the class period. *Id.* Adopting a "retained shares analysis," the court appointed Tadros as lead plaintiff. *Id.* at \*16 (citing, *inter alia*, *Applestein*, 2010 U.S. Dist. LEXIS 98255). As the court reasoned:

> At this stage of the proceedings, the Court is inclined to adopt the most expansive view of potential recovery in determining which party has the greatest financial interest for the appointment as lead plaintiff. The view advanced by Mr. Tadros and his counsel accounts for multiple price drops, as well as the purchase price of shares purchased at allegedly inflated prices. … An expansive view of damages benefits members of the putative class and prevents a rift between class members who may seek to assert entitlement to a greater amount of damages than those sought by the lead plaintiff. For these reasons, the Court concludes Mr. Tadros's financial interest is the greatest.

*Id.* at \*16-\*17. *See also, e.g.*, *Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*, No. 13 C 2111, 2013 U.S. Dist. LEXIS 106246, at \*14-\*15 (N.D. Ill. July 30, 2013) (appointing as lead plaintiff a movant claiming losses from all three alleged corrective disclosures, due to its "great incentive to vigorously litigate all material issues in this case," over a competing movant with arguably larger losses derived solely from the first disclosure); *Doshi v. Gen. Cable*, No. 2:17-025 (WOB-CJS), 2017 U.S. Dist. LEXIS 184254, at \*9-\*10 (E.D. Ky. Nov. 7, 2017) (appointing as lead plaintiff a movant who held stock through both corrective disclosures to the end of the class period over a competing movant with claimed losses six times greater derived solely from the first disclosure).[2]

For these reasons, and those previously presented to the Court, NSHEPP has the "largest financial interest" within the meaning of the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb), and

---

[2] The Ferraro Group's three cited cases do not counsel a different result. *See* Dkt. No. 50 at 6 (citing *Mulligan v. Impax Labs., Inc.*, No. C-13-1037 EMC, 2013 U.S. Dist. LEXIS 93119 (N.D. Cal. July 2, 2013), *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013), and *Bodri v. GoPro, Inc.*, No. 16-cv-00232-JST, 2016 U.S. Dist. LEXIS 57559 (N.D. Cal. Apr. 28, 2016)). As quoted by the Ferraro Group, those cases stand only for the meek proposition that a retained shares analysis is a "less useful analytical tool" under certain circumstances involving multiple alleged corrective disclosures. Like the Ferraro Group, those cases do not address those cited by NSHEPP herein and in its earlier filings.

[PROPOSED] REPLY MEMORANDUM IN FURTHER SUPPORT OF
THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 5:19-cv-01372-LHK

is the "most adequate plaintiff" that is "most capable of adequately representing the interests of class members" in accordance with Fed. R. Civ. P. 23 and the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(i) and (iii)(I)(cc).  NSHEPP's appointment as lead plaintiff would best ensure that the interests of *all* putative Class members are vigorously represented, not merely those investors injured by the first alleged corrective disclosure.

### B.    Bucks County's Belated Argument Lacks Any Merit

After withdrawing its motion, filing no opposition or reply briefs, remaining silent for a month after NSHEPP submitted its stipulation proposing to serve as a co-lead plaintiff with the Ferraro Group, and otherwise completely conceding leadership of this litigation, Bucks County did a complete, 180-degree about-face once the Court rejected the stipulation so as to appoint a single lead plaintiff instead of co-leads.  Now, suddenly, Bucks County expressed newfound faith that it would best lead this litigation, solely because NSHEPP, while consistently maintaining its position that it should be a lead plaintiff, opted to propose a leadership structure and thereby avoid a time- and resource-consuming public leadership battle with the sole remaining competing movant, the Ferraro Group.  Bucks County's irrational argument, boiled down, is that proposing to serve as a co-lead plaintiff, rather than a sole lead plaintiff, is a disqualifying misstep for a movant – while wholly withdrawing one's leadership motion from consideration by the Court (as Bucks County did) poses no impediment to appointment.

Bucks County's argument is premised on misapplication of a single case, *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 WL 6886020 (C.D. Cal. May 2, 2006), where, among many other infirmities, the court found that the proposed merger of two large, unrelated investor groups with nine total members represented by three law firms was too unwieldy to adequately represent the class and that the proposed merger of the groups had been made by counsel without any involvement by the investors. *Id.* at *5-*9.  In rejecting both groups, together and separately, the court expressed its grave concern that the investors were "unable effectively to monitor their counsel" who "will not be adequately supervised." *Id.* at *9.  Without

8

a shred of evidence, Bucks County speculatively insinuates that NSHEPP's decision to enter into the leadership stipulation must have arisen from similar circumstances.  *See* Dkt. No. 58 at 2-3.

This meritless argument is easily refuted by NSHEPP's Supplemental Declaration, submitted herewith, which NSHEPP's CEO executed *one day* after Bucks County's baseless filing.  As it attests, unambiguously: (i) "NSHEPP's counsel, Pomerantz, has kept me informed throughout this litigation of all significant developments" (*id*. ¶2); (ii) "Following dialogue with NSHEPP's counsel, Pomerantz, I authorized the filing of NSHEPP's Lead Plaintiff Motion" (*id.* ¶3); (iii) "Following dialogue with NSHEPP's counsel, Pomerantz, I authorized entry into a stipulation proposing a Co-Lead Plaintiff leadership structure consisting of (i) NSHEPP and (ii) competing movants the Ferraro Family Foundation, Inc. and James L. Ferrero" (*id.* ¶4); (iv) "I, along with NSHEPP's counsel, Pomerantz, considered this to be an appropriate arrangement, as we believed that it would achieve the important goal of having NSHEPP, an institutional investor, have a leadership role overseeing this litigation" (*id.*); and (iv) "I am aware that the Court has declined to enter the Co-Lead Stipulation.  Given this development, NSHEPP continues to seek appointment as the sole Lead Plaintiff in this litigation, and I have authorized our counsel, Pomerantz, to continue to seek such appointment" (*id.* ¶5).

Tellingly, no such declaration by Bucks County was submitted in support of its brief purportedly "reviving" its previously withdrawn lead plaintiff motion.  This omission is glaring, considering Bucks County's total reversal of its prior motion withdrawal (exactly the sort of "ever-changing position" that its own filing purportedly views askance).

By contrast, NSHEPP's position has been consistent throughout these proceedings. NSHEPP maintains that a sophisticated institutional investor, with experience overseeing securities fraud litigation, should oversee the important claims at issue.  Whether as a co-lead plaintiff or the sole lead plaintiff, NSHEPP believes itself to best fit the bill, as the "most adequate plaintiff" "most capable of adequately representing the interests of class members" within the meaning of the PSLRA, 15 U.S.C. §78u-4(a)(3)(B), and Fed. R. Civ. P. 23.

## III.   CONCLUSION

For the foregoing reasons, and those set forth in its prior filings (Dkt. Nos. 32, 51, 57), NSHEPP respectfully requests that the Court issue an Order: (1) appointing NSHEPP as Lead Plaintiff for the Class; and (2) approving its selection of Pomerantz as Lead Counsel for the Class.

Dated:  July 17, 2019                    Respectfully submitted,

POMERANTZ LLP

*/s/ Matthew L. Tuccillo*
Matthew L. Tuccillo
(*admitted pro hac vice*)
Jeremy A. Lieberman
(*admitted pro hac vice*)
J. Alexander Hood II
(*admitted pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: mltuccillo@pomlaw.com
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone:  (310) 405-7190
Email:  jpafiti@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
(*admitted pro hac vice*)
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff Movant the Nova Scotia Health Employees' Pension Plan and Proposed Lead Counsel for the Class*

[PROPOSED] REPLY MEMORANDUM IN FURTHER SUPPORT OF
THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 5:19-cv-01372-LHK

## **PROOF OF SERVICE**

I hereby certify that on July 17, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Matthew L. Tuccillo*
Matthew L. Tuccillo

11
[PROPOSED] REPLY MEMORANDUM IN FURTHER SUPPORT OF
THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 5:19-cv-01372-LHK