UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICHOLAS MELUCCI,<br><br>Plaintiff,<br><br>v.<br><br>CORCEPT THERAPEUTICS INCORPORATED, et al.,<br><br>Defendants. | Case No. 19-CV-01372-LHK<br><br>**ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL**<br><br>Re: Dkt. Nos. 15, 17, 24, 29, 32, 58 |

This case is a putative securities class action brought against Defendant Corcept Therapeutics Incorporated ("Corcept"); its President and Chief Executive Officer, Joseph K. Belanoff; and its Chief Financial Officer, Charles Robb. Plaintiffs in this action consist of "persons and entities that purchased or otherwise acquired Corcept securities between August 2, 2017 and February 5, 2019, inclusive (the 'Class Period')." ECF No. 1 ("Compl.") ¶ 1. Before the Court are four outstanding Motions for Appointment as Lead Plaintiff and Approval of Lead Counsel.

**I. BACKGROUND**

Corcept is a "pharmaceutical company that purports to develop medications to treat severe metabolic, oncologic, and psychiatric disorders by modulating the effect of cortisol." *Id.* ¶ 2.

1

Plaintiffs allege that, throughout the Class Period, Corcept's "positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis," in light of the following:

> (1) that the Company had improperly paid doctors to promote its drug Korlym; (2) that the Company aggressively promoted Korlym for off-label uses; (3) that the Company's sole specialty pharmacy was a related party; (4) that the Company artificially inflated its revenue and sales using illicit sales practices through a related party; (5) that such practices are reasonably likely to lead to regulatory scrutiny.

*Id.* at ¶ 8. Plaintiffs claim that, as the public became aware of the truth, the revelations gradually impacted the share price, culminating in "significant losses and damages." *See id.* ¶¶ 3–9.

After the instant suit was filed and notice publicized regarding the pendency of this case, the Court received five motions to appoint lead plaintiff and approval of lead counsel. The first is Plaintiff Robert Baffa's motion for appointment of Baffa as lead plaintiff and approval of Baffa's selection of counsel. ECF No. 15. The second motion was filed by Plaintiffs Ferraro Family Foundation, Inc. and James L. Ferraro (collectively, the "Ferraro Group"), requesting appointment of the group as lead plaintiff and approval of its selection of counsel. ECF No. 17. The third is Plaintiff Bucks County Employees Retirement Fund's ("BCERF") motion for appointment of BCERF as lead plaintiff and approval of its selection of counsel. ECF No. 24. The fourth is Plaintiff Nicholas Melucci's motion for appointment of Melucci as lead plaintiff and approval of its selection of counsel. ECF No. 29. The fifth is Plaintiff Nova Scotia Health Employees Pension Plan's ("NSHEPP") motion for appointment of NSHEPP as lead plaintiff and approval of its selection of counsel. ECF No. 32.

Baffa withdrew his motion, ECF No. 44, as did BCERF, ECF No. 42. The Court denied a stipulation by the Ferraro Group and NSHEPP proposing a co-lead plaintiff structure, ECF No. 55, after which BCERF filed a response purporting to renew its motion to serve as lead plaintiff and for approval of its choice of counsel.[1] ECF No. 58.

---

[1] Following the Court's denial of the joint stipulation, the Ferraro Group and NSHEPP filed letter "responses" to the denial. *See* ECF Nos. 56, 57. The parties are advised that the Court does not allow such filings and will not consider them in the future.

2
Case No. 19-CV-01372-LHK
ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL

## II. LEGAL STANDARD

The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4, governs the selection of a lead plaintiff in private securities class actions. In the PSLRA's own words, this plaintiff is to be the "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). Under the PSLRA, a three-step process determines the lead plaintiff. *In re Cavanaugh,* 306 F.3d 726, 729 (9th Cir. 2002). First, the first plaintiff to file an action governed by the PSLRA must publicize the pendency of the action, the claims made, and the purported class period "in a widely circulated national business-oriented publication or wire service." 15 U.S.C. § 78u–4(a)(3)(A)(i)(I). This notice must state that "any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. § 78u–4(a)(3)(A)(i)(II).

Second, the court must select the presumptive lead plaintiff. *See In re Cavanaugh,* 306 F.3d at 729–30 (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)). In order to determine the presumptive lead plaintiff, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Id.* at 730 (footnote omitted). Once the district court identifies the plaintiff with the most to gain, the district court must determine whether that plaintiff, based on the information he provides, "satisfies the requirements of Federal Rule of Civil Procedure 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* If he does, that plaintiff becomes the presumptive lead plaintiff. *Id.* If not, the court turns to the plaintiff with the next-largest financial stake and determines whether that plaintiff satisfies the requirements of Rule 23. *Id.* The court repeats this process until it selects a presumptive lead plaintiff. *Id.*

Third, those plaintiffs not selected as the presumptive lead plaintiff may "rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)). This is done by showing that the presumptive lead plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa)-(bb). If the court determines that the presumptive lead plaintiff does not meet the typicality or adequacy requirement, then it must return to step two,

3

Case No. 19-CV-01372-LHK
ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL

1  select a new presumptive lead plaintiff, and again allow the other plaintiffs to rebut the new
2  presumptive lead plaintiff's showing. *In re Cavanaugh,* 306 F.3d at 731. The court repeats this
3  process "until all challenges have been exhausted." *Id.*

Under the PSLRA, the lead plaintiff is given the right, subject to court approval, to select counsel to represent the class. 15 U.S.C. § 78u–4(a)(3)(B)(v). "[T]he district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently." *Cohen v. U.S. Dist. Court,* 586 F.3d 703, 711 (9th Cir. 2009). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Id.* at 712.

## III. ANALYSIS

In conformity with the procedure established by the PSLRA and the Ninth Circuit, the Court will determine which of the moving plaintiffs is presumptively the "most adequate plaintiff," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and then whether any of the other purported class members have rebutted that presumption.[2] Then, after the Court has selected the lead plaintiff, the Court will consider the lead plaintiff's choice of counsel.

### A. The Court determines that the Ferraro Group is the presumptive lead plaintiff.

#### 1. The Ferraro Group has the largest financial interest in the relief.

The Ferraro Group posits that it has the largest financial stake in the suit. ECF No. 50 ("Ferraro Opp'n") at 4–5. By contrast, NSHEPP argues that it has the largest financial interest when "assessed in terms of shares retained at the end of the Class Period." ECF No. 51 ("NSHEPP Opp'n") at 4–5. The two remaining movants, BCERF and Melucci, do not argue that their financial interests in the litigation exceed those of the Ferraro Group and NSHEPP. *See* ECF Nos. 24, 29. The Court will first discuss the methodology it will use to assess which plaintiff has "the largest financial interest in the relief," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), and then apply that methodology.

---

[2] Because the parties do not dispute that the procedural requirements outlined above at the first step have been met, the Court does not further discuss these requirements. *See* ECF No. 13 (providing notification that Plaintiff Melucci published notice of this action via Business Wire).

4
Case No. 19-CV-01372-LHK
ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL

a. Methodology

The Ninth Circuit has provided limited guidance on how the district court should "calculate each potential lead plaintiff's interest in the litigation." *In re Cavanaugh*, 306 F.3d at 730 n.4. District courts "may select accounting methods that are both rational and consistently applied." *Id.* Given this discretion, courts have used different methods, but have mostly equated financial interest with either approximate economic losses suffered or potential recovery. *See Perlmutter v. Intuitive Surgical, Inc.*, No. 10-cv-03451-LHK, 2011 WL 566814, at *3 (N.D. Cal. Feb. 15, 2011) (delineating the two different methods). Here, the movants evaluate financial interest in the litigation using approximate economic losses, and, for reasons further explained below, the Court will do so as well.

To evaluate approximate economic losses, courts frequently weigh four factors that were first introduced in *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11 1997), and *In re Olsten Corporation Securities Litigation*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998). *See, e.g.*, *Banerjee v. Avinger, Inc.*, No. 17-cv-03400-CW, 2017 WL 4552063, at *2 (N.D. Cal. Oct. 11, 2017) (applying *Lax-Olsten* test); *Vancouver Alumni Asset Holding, Inc. v. Daimler AG*, No. 16-02942-SJO, 2016 WL 10646304, at *2 (C.D. Cal. July 20, 2016) (same). Under the *Lax-Olsten* test, courts consider: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re Olsten*, 3 F. Supp. at 295. Courts applying this test consider the factors together as a whole to approximate each moving plaintiff's losses. *See, e.g.*, *Vancouver Alumni Asset Holding, Inc.*, 2016 WL 10646304, at *2–3.

NSHEPP argues that the Court should apply this test but should place determinative weight on the second factor (net shares purchased). NSHEPP Opp'n at 4–5. But none of the cases cited by NSHEPP apply *Lax-Olsten* in this way. *Id.* at 4. Instead, the courts that emphasize net shares purchased (or the "retained shares") are actually evaluating *potential recovery*, not approximate losses under the four-factor test. *See, e.g.*, *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-06140-

5

Case No. 19-CV-01372-LHK
ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL

MHP, 2008 WL 3925289, at *3–4 (N.D. Cal. Aug. 22, 2008); *Perlmutter*, 2011 WL 566814, at *6–*7. Those courts reason that certain losses from shares sold *during* the class period (and not retained at the end of the class period) may not be attributable to the alleged fraud and thus are likely not recoverable. *See id.*

However, the net shares purchased analysis has limited usefulness here, where disclosures are made gradually and have multiple market impacts on share price. ECF No. 56 at 2. Indeed, courts have recognized this limitation and explained that a measure of "net shares purchased and a 'retained shares' calculation are less useful analytical tools where gradual disclosures are involved, because those methods assume a constant 'fraud premium' throughout the class period." *Mulligan v. Impax Labs., Inc.*, No. C-13-1037-EMC, 2013 WL 3354420 (N.D. Cal. July 2, 2013) (quoting *Nicolow v. Hewlett Packard Co.*, 12-05980-CRB, 2013 WL 792642, at *4 n.5 (N.D. Cal. Mar. 4, 2013)). Here, for example, the Ferraro Group purchased more than four times the amount of shares that NSHEPP purchased during the class period. Ferraro Opp'n at 6. Moreover, the Ferraro Group only sold 5,690 shares during the class period prior to any corrective disclosures, and sold 275,000 shares only *after* the January 25, 2019 publication of the Southern Investigative Reporting Foundation report that caused the largest drop in Corcept stock prices, which led the Ferraro Group to suffer losses higher than any other movant. *Id.* Thus, a measure of loss based solely on shares retained at the end of the class period could easily undervalue a plaintiff's potential recovery in cases like this one. In light of these deficiencies with the net shares purchased metric, the Court rejects NSHEPP's proposed modification of the *Lax-Olsten* test that would emphasize that factor.

Notably, for the same reasons, the Court finds the potential recovery analysis to be inferior to the approximate economic loss analysis. Assessing potential recovery in a case involving gradual disclosures would require fact-intensive loss causation inquiries that are not amenable to analysis at this stage of the proceedings. *See Perlmutter*, 2011 WL 566814, at *5 (describing the process of calculating compensable damages to be a "highly technical task that usually involves a battle of the experts"). The Court finds the approximate economic loss analysis to be the more

6

workable methodology and proceeds under that test.

b. Application

For the four potential lead plaintiffs, the four *Lax-Olsten* factors are as follows:

| Movant | (1) *Shares Purchased* | (2) *Net Shares Purchased* | (3) *Net Funds Expended* | (4) *Approximate Loss*[3] |
|---|---|---|---|---|
| Ferraro Group | **305,690** | 25,000 | **$2,126,327.55** | **$1,828,049.77** |
| NSHEPP | 72,000 | **72,000** | $994,284.00 | $135,244.00 |
| BCERF | 10,562 | 10,562 | $219,382.94 | $93,366.54 |
| Melucci | 570 | 0 | $3,478.91 | $3,478.91 |

*See* Ferraro Opp'n at 5. Three of the four factors weigh heavily in favor of the Ferraro Group and strongly suggest that the Ferraro Group is the purported class member with the largest financial stake in the litigation. The remaining factor, net shares purchased, weighs in favor of NSHEPP. Considering all four factors together, the Court determines that the Ferraro Group is the clear frontrunner in terms of approximate losses. Thus, the Court finds that the Ferraro Group has "the largest financial interest in the relief sought by the class," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), and proceeds to evaluate whether the Ferraro Group also satisfies Rule 23(a).

**2. The Ferraro Group also satisfies the requirements of Rule 23(a).**

In addition to having the largest financial stake in this litigation, the Court finds that the Ferraro Group has also established that it satisfies the requirements of Rule 23(a), particularly typicality and adequacy. *See In re Cavanaugh*, 306 F.3d at 732 ("Once it determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements."). This showing need not be as thorough as what would be required on a class certification motion. *See Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010).

The test for typicality asks "whether other members have the same or similar injury,

---

[3] The Court utilizes a "last-in-first-out" ("LIFO") method for calculating total losses, which comports with "[t]he weight of authority" and avoids artificially inflating losses with market activity outside of the class period. *See Markette v. XOMA Corp.*, No. 15-cv-03425-HSG, 2016 WL 2902286 (N.D. Cal. May 13, 2016) (quoting *Bodri v. Gopro, Inc.*, No. 16-cv-00232-JST, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016)).

7
Case No. 19-CV-01372-LHK
ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL

1 whether the action is based on conduct which is not unique to the named plaintiffs, and whether
2 other class members have been injured by the same course of conduct." *Hanon v. Dataproducts*
3 *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.
4 Cal. 1985)); *In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 408 (N.D. Cal. 2012). In this
5 case, like all other purported class members, the Ferraro Group purchased Corcept securities
6 during the Class Period, at prices artificially inflated by the alleged misstatements, and suffered
7 damages as a result. *See* Ferraro Opp'n at 6–7. The Ferraro Group's claims appear to be identical
8 to the claims of other members of the putative class, thus satisfying the typicality requirement for
9 purposes of lead plaintiff appointment. *See City of Dearborn Heights Act 345 Police & Fire Ret.*
10 *Sys. v. Align Tech., Inc.*, No. 12–CV–06039–LHK, 2013 WL 2368059, at *4 (N.D. Cal. May 29,
11 2013) (finding typicality requirement met when proposed lead plaintiff "purchased [the
12 defendant's] common stock during the Class Period, allegedly in reliance upon [the d]efendants'
13 purported false and misleading statements, and alleged[ly] suffered damages as a result").

14 The test for adequacy asks whether the class representative and counsel "have any conflicts
15 of interest with other class members" and whether the class representative and his counsel will
16 "prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957
17 (9th Cir. 2003). Here, there is no indication of conflicts between the Ferraro Group and other class
18 members, nor is there evidence that the Ferraro Group is subject to any unique defenses. *See*
19 Ferraro Opp'n at 8. Accordingly, the Court finds that, for purposes of lead plaintiff appointment,
20 the Ferraro Group has made a showing satisfying the adequacy requirements of Rule 23(a).

21 **B. No other purported class member has rebutted the presumption.**

22 Having established that the Ferraro Group has the greatest financial stake and satisfies the
23 requirements of Rule 23(a), the Ferraro Group is presumptively the most adequate plaintiff to
24 represent the class. This presumption may be rebutted only upon proof by a member of the
25 purported plaintiff class that the Ferraro Group either (1) "will not fairly and adequately protect
26 the interests of the class," or (2) "is subject to unique defenses that render [it] incapable of
27 adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(3)(B)(iii)(II). The Court finds that no

28

8

Case No. 19-CV-01372-LHK
ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL

purported class member has come forward with such evidence to rebut the presumption in favor of the Ferraro Group.

The Court finds unpersuasive NSHEPP's arguments that the lack of clarity around the Ferraro Family Foundation's "assets, leadership structure, voting procedures, [and] litigation experience" renders the Ferraro Group an inadequate class representative. *See* ECF No. 57–58. NSHEPP argues instead that its appointment as lead plaintiff would satisfy "PSLRA's purpose," because it is an institutional investor with a large financial interest in the litigation. *See* NSHEPP Opp'n at 2–5. But "Congress enacts statutes, not purposes," and here, "the Reform Act provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." *Id.* at 732. As the Ninth Circuit has cautioned, courts "may not depart from the statutory text because they believe some other arrangement would better serve the legislative goals." *Id.* The Ninth Circuit has explicitly rejected NSHEPP's argument, and the Court thus finds that NSHEPP has failed to rebut the presumption favoring the Ferraro Group as lead plaintiff.

Similarly, the Court rejects BCERF's argument that neither the Ferraro Group nor NSHEPP should be appointed as lead plaintiff. ECF No. 58. BCERF's claim appears to be premised on the Ferraro Group's and NSHEPP's joint stipulation to serve as co-lead plaintiffs, ECF No. 54, which the Court denied, ECF No. 55. BCERF fails to show how the rejected stipulation shows that the Ferraro Group "will not fairly and adequately protect the interests of the class." ECF No. 58 at 1–3; *see* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa). The Court does not consider the joint stipulation to be evidence rebutting the presumption in favor of the Ferraro Group as lead plaintiff.

Accordingly, the Court concludes that the presumption that the Ferraro Group is the most adequate lead plaintiff has not been rebutted. The Court therefore need not proceed to consider the motion of the movant with the next largest financial stake. *See In re Cavanaugh*, 306 F.3d at 730–31. "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, [that plaintiff] is entitled to lead plaintiff status, even if the district court is

9

1 convinced that some other plaintiff would do a better job." *Id.* at 732. Thus, the Court appoints the Ferraro Group to be lead plaintiff group in this action.

### C. The Ferraro Group's choice of Lead Counsel is reasonable.

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). The decision of lead counsel belongs to the lead plaintiff. *In re Cavanaugh*, 306 F.3d at 734 n.14. The Ferraro Group has chosen the law firm of Levi & Korsinsky, LLP ("Levi & Korsinsky"). The Court has reviewed the firm's resume, ECF No. 19 ("McCall Decl."), Ex. D, and is satisfied that the lead plaintiff has made a reasonable choice of counsel. Accordingly, the Court defers to the Ferraro Group's choice in counsel.

## IV. CONCLUSION

For the reasons stated above, the Court appoints the Ferraro Group as the lead plaintiff in this action and approves the Ferraro Group's selection of Levi & Korsinsky as lead counsel. The Court accordingly GRANTS the Ferraro Group's motion, ECF No. 17, and DENIES BCERF's motion, ECF No. 24 (renewed as ECF No. 58), Melucci's motion, ECF No. 29, and NSHEPP's motion, ECF No. 32.

To ensure efficiency, the Court adopts the following protocols. Other than Levi & Korsinsky, no other law firms shall work on this action for the putative class without prior approval of the Court. Motions for approval of additional Plaintiffs' counsel shall identify the additional Plaintiffs' counsel and their background, the specific proposed tasks, and why Levi & Korsinsky cannot perform these tasks. The Court further orders that any billers who will seek fees in this case, including staff, consultants, and experts, shall maintain contemporaneous billing records of all time spent litigating this case. By "contemporaneous," the Court means that an individual's time spent on a particular activity should be recorded no later than seven days after that activity occurred. Mr. Adam C. McCall shall review and approve attorneys' fees and costs each month and strike any duplicative or unreasonable fees and costs.

10

Case No. 19-CV-01372-LHK
ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL

**IT IS SO ORDERED.**

Dated: October 7, 2019

_____
LUCY H. KOH
United States District Judge