**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (admitted *pro hac vice*)
Gregory M. Potrepka (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Email: shopkins@zlk.com
Email: gpotrepka@zlk.com

*Counsel for Lead Plaintiff the
Ferraro Family Foundation, Inc.,
and James L. Ferraro*

[Additional counsel listed on signature
page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| FERRARO FAMILY FOUNDATION, INC. and JAMES L. FERRARO, on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CORCEPT THERAPEUTICS INCORPORATED, JOSEPH K. BELANOFF, CHARLES ROBB, and SEAN MADUCK, <br><br> Defendants. | Case No. 3:19-CV-01372-JD <br><br> **CLASS ACTION** <br><br> **LEAD COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:    June 6, 2024 <br> Time:    10:00 a.m. <br> Room:  Courtroom 11, 19th Floor <br> Judge:   Honorable James Donato |

## **NOTICE OF MOTION AND MOTION**

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on June 6, 2024, at 10:00 a.m. or at such other time as the Court determines, in Courtroom 11, 19th Floor, the Honorable James Donato, United States District Court Judge presiding, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Lead Counsel, Levi & Korsinsky, LLP, will move this Court for an Order awarding attorneys' fees, reimbursement of litigation expenses, and reimbursement of costs and expenses to Lead Plaintiff the Ferraro Group (consisting of Ferraro Family Foundation, Inc. and James L. Ferraro) ("Lead Plaintiff") in the above captioned securities case pursuant to Rule 23(h) of the Federal Rules of Civil procedure and the Court's Order Granting Preliminary approval of Settlement (ECF 201) ("Preliminary Approval Order").

This Motion is based on the following Memorandum of Points and Authorities, the accompanying Declaration of Shannon L. Hopkins in Support of Lead Plaintiff's Motion for Final Approval of Proposed Class Action Settlement and Lead Counsel's Motion for Attorneys' Fees, Reimbursement of Expenses, and Award of Costs and Expenses to Lead Plaintiff ("Hopkins Declaration" or "Hopkins Decl.") with accompanying exhibits, all other prior pleadings in this action, arguments of counsel, and any other information or argument that may be required by the Court.

A proposed Order will be submitted with Lead Counsel's reply, which is to be submitted on May 30, 2024, after the May 13, 2024 deadline for Settlement Class Members ("Class Members") to object to the motion for fees and expenses has passed.

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -i-

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................III

STATEMENT OF ISSUES TO BE DECIDED ....................................................................VIII

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................1

    I.    INTRODUCTION ......................................................................................1

    II.    PERTINENT FACTUAL AND PROCEDURAL BACKGROUND.............................4

    III.    ARGUMENT .............................................................................................4

        A.    The Requested Attorneys' Fees are Fair and Reasonable and Should be Approved.................................................................................................4

        B.    The Requested Fee is Consistent with the Benchmark in the Ninth Circuit........5

            1.    Lead Counsel Obtained a Favorable Result for the Class.........................6

            2.    Litigation of this Securities Action Involved Significant Risks ...............8

            3.    Lead Counsel Provided Quality Representation ....................................12

            4.    The Contingent Nature of the Case and Financial Burden Carried by Lead Counsel ...........................................................................................13

            5.    The Fee is Within the Customary Fee in Similar Actions ......................15

            6.    Reaction of Class Members to Date Supports the Fee Request..............15

            7.    The Requested Fee is Reasonable Under the Lodestar Cross-Check .....16

        C.    The Litigation Expenses are Reasonable and were Reasonably Incurred ..........19

        D.    The Requested Fee and Expense Award for Plaintiff is Reasonable..................24

CONCLUSION.....................................................................................................................25

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -ii-

## TABLE OF AUTHORITIES

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) .......................................................................................... 8

*Arkansas Tchr. Ret. Sys. v. Goldman Sachs Group, Inc.*,
  77 F.4th 74 (2d Cir. 2023) ......................................................................................... 3, 11

*Azar v. Blount Int'l., Inc.*,
  2019 WL 7372658 (D. Or. Dec. 31, 2019) ..................................................................... 6

*Blum v. Stenson*,
  465 U.S. 886 (1984)....................................................................................................... 18

*Cheng Jianchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)................................................................. 8

*Davis v. Yelp, Inc.*,
  2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) ................................................................. 6

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ..................................................... 12, 16, 20

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)......................................................................................................... 9

*Felix v. WM. Bolthouse Farms, Inc.*,
  2020 WL 68577 (E.D. Cal. Jan. 7, 2020) ...................................................................... 13

*Fischel v. Equitable Life Assur. Soc'y of the U.S.*,
  307 F.3d 997 (9th Cir. 2002) .......................................................................................... 4

*Fleming v. Impax Lab'ys Inc.*,
  2022 WL 2789496 (N.D. Cal. Jul. 15, 2022)............................................................. 6, 19

*Flores v. Dart Container Corp.*,
  2021 WL 1985440 (E.D. Cal. May 18, 2021) ............................................................... 13

*Garcia v. Schlumberger Lift Sols.*,
  2020 WL 6886383 (E.D. Cal. Nov. 24, 2020), *report and recommendation adopted*,
  2020 WL 7364769 (E.D. Cal. Dec. 15, 2020) ................................................................ 5

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ....................................................................................... 20, 23

*HCL Partners Ltd. P'ship v. Lead Wireless Int'l, Inc.*,
  2010 WL 4156342 (S.D. Cal Oct. 15, 2010) ................................................................ 13

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018).................................................... 8, 17, 19

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -iii-

*Hsu v. Puma Biotechnology, Inc.*,
No. 8:15-cv-00865-DOC-SHK, ECF 913 (C.D. Cal. Aug. 3, 2022) .............................................. 11

*Huntsman v. Sw. Airlines Co.*,
No. 3:17-cv-03972-JD, ECF 57 (N.D. Cal. Oct. 4, 2019) ............................................................ 25

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014) .................................................................. passim

*In re Amgen Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ................................................................... 18, 19

*In re Amkor Tech. Inc. Sec. Litig.*,
2009 WL 10708030 (D. Ariz. Aug. 4, 2008) ............................................................................ 12

*In re Apollo Grp., Inc. Sec. Litig.*,
2008 WL 3072731 (D. Ariz. Aug. 4, 2008) rev'd and remanded, 2010 WL 5927988
(9th Cir. June 23, 2010) ......................................................................................................... 11

*In re Aqua Metals, Inc. Sec. Litig.*,
2022 WL 612804 (N.D. Cal. Mar. 2, 2022) .............................................................................. 19

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ..................................................................................................... 6

*In re Capacitors Antitrust Litig.*,
2017 WL 9613950 (N.D. Cal. June 27, 2017) .............................................................. 4, 5, 12

*In re Capacitors Antitrust Litig.*,
2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ........................................................................ 18

*In re Capacitors Antitrust Litig.*,
2020 WL 6544472 (N.D. Cal. Nov. 7, 2020) .......................................................................... 20

*In re Capacitors Antitrust Litig.*,
2023 WL 2396782 (N.D. Cal. Mar. 6, 2023)....................................................................... 6, 25

*In re DJ Orthopedics, Inc. Sec. Litig.*,
2004 WL 1445101 (S.D. Cal. June 21, 2004)........................................................................... 15

*In re ECOtality, Inc. Sec. Litig.*,
2015 WL 5117618 (N.D. Cal. Aug. 28, 2015) ........................................................................... 4

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. Jul 22, 2019).............................................................................. 8

*In re Facebook Biometric Info. Priv. Litig.*,
522 F. Supp. 3d 617 (N.D Cal. 2021) ...................................................................................... 18

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................................... 12, 13, 20

*In re Hewlett-Packard Co. Sec. Litig.*,
2014 WL 12656737 (C.D. Cal. Sept. 15, 2014) ....................................................................... 20

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -iv-

*In re Illumina, Inc. Sec. Litig.*,
2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) ................................................................................ 25

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......................................................... 10, 17, 23, 25

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .............................................................. 14

*In re Lenovo Adware Litig.*,
2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ................................................................. 6

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) .................................................................... 22, 23

*In re Nexus 6P Prod. Liab. Litig.*, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019)................................. 8

*In re Nutanix, Inc. Sec. Litig.*,
No. 3:19-cv-01651, ECF 318-2 (N.D. Cal. Oct. 6, 2023).................................................. 19

*In re Omnivision Texchs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................................... passim

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) ...................... 14

*In re Pac. Enterprises Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ................................................................................... 6

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ............................................................. 8, 18

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005), as amended (Feb. 25, 2005) ................................................. 5

*In re Robinhood Outage Litig.*,
2023 WL 5321525 (N.D. Cal. Jul. 28, 2023)................................................................ 20

*In re Tesla Inc. Securities Litigation*,
Case No. 18-cv-4865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023) ........................................... 14

*In re Tezos Sec. Litig.*,
No. 3:17-cv-06779-RS, slip op. at 2 (N.D. Cal. Aug. 28, 2020) ........................................... 6

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007).......................................................................... 17

*In re U. S. Steel Consolidated Cases*,
No. 2:17-cv-00579, ECF 346-8, 358 (W.D. Pa. Mar. 21, 2023) ........................................... 22

*In re Vaxart, Inc. Sec. Litig.*,
No. 3:20-cv-05949, Dkt. 274 (N.D. Cal. Jan. 25, 2023)................................................... 6

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -v-

*In re Verifone Holdings, Inc. Sec. Litig.*,
    2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ................................................................ 18

*In re Vocera Commc'ns, Inc. Sec. Litig.*,
    2016 WL 8201593 (N.D. Cal. July 29, 2016) ................................................................. 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ........................................................... 17, 19

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ......................................................................... 4, 5, 8, 13

*Knight v. Red Door Salons, Inc.*,
    2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .................................................................... 16

*Larsen v. Trader Joe's Co.*,
    2014 WL 3404531 (N.D. Cal. July 11, 2014) ................................................................. 15

*Lesevic v. Spectraforce Techs. Inc.*,
    2021 WL 1599310 (N.D. Cal. Apr. 23, 2021) ............................................................... 17

*McPhail v. First Command Fin. Plan., Inc.*,
    2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ............................................................. 8, 15

*Moore v. IMCO Recycling of CA, Inc.*,
    2005 WL 5887180 (C.D. Cal. Sept. 28, 2005) .............................................................. 22

*Morris v. Lifescan, Inc.*,
    54 F. App'x 663 (9th Cir. 2003) ..................................................................................... 6

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................. 16

*Ochoa v. McDonald's Corp.*,
    2016 WL 8290114 (N.D. Cal. Nov. 14, 2016) ............................................................... 20

*Perez v. Rash Curtis & Assocs.*,
    2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ............................................................... 15

*Purple Mountain Trust v. Wells Fargo & Co.*,
    No. 3:18-cv-03948-JD, ECF 233-1, 243 (N.D. Cal. Sep. 26, 2023) .......................... 19, 25

*Rieckborn v. Velti PLC*,
    2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ................................................................... 20

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) ......................................................................................... 5

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ....................................................................................... 11

*Savani v. URS Pro. Sols. LLC*,
    2014 WL 172503 (D.S.C. Jan. 15, 2014) ...................................................................... 14

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -vi-

*Schulein v. Petroleum Development Cor.*,
    2015 WL 12762256 (C.D. Cal. Mar. 16, 2015) .................................................................... 25

*Singer v. Becton Dickinson and Co.*,
    2010 WL 2196104 (S.D. Cal. Jun. 1, 2010) ...................................................................... 25

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................................................. 5

*Vataj v. Johnson*,
    No. 4:19-cv-06996, Dkt. 137 (N.D. Cal. Nov. 5, 2021) .................................................. 6, 8

*Vincent v. Reser*,
    2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ....................................................................... 23

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ....................................................................................... 5, 15

*Weitzke v. CoStar Realty Info, Inc.*,
    2011 WL 817438 (S.D. Cal. Mar. 2, 2011) ........................................................................ 8

**Statutes**

15 U.S.C. §77 ............................................................................................................................ 24

15 U.S.C. §78 .............................................................................................................................. 5

**Other Authorities**

Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action
    Litigation: 2023 Full-Year Review*, NERA (Jan. 23, 2024) ............................................ 7, 8

H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. (1995) ....................................................... 24

L.T. Bulan, L.E. Simmons, *Securities Class Action Settlements, 2023 Review and
    Analysis*, Cornerstone Research (2024) ........................................................................... 7, 8

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -vii-

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the application for an Order awarding attorneys' fees, reimbursement of litigation expenses, and reimbursement of costs and expenses to Lead Plaintiff should be granted upon a finding that:

1.    Lead Counsel's application for an attorneys' fee award to Lead Counsel in the amount of 25% of the Settlement is fair and reasonable;

2.    Lead Counsel's request for payment of $576,161.71 in litigation expenses and charges incurred by Lead Counsel in the Action is fair and reasonable; and

3.    Lead Plaintiff's request for a $15,000 payment pursuant to §78u-4(a)(4) for its time and expenses incurred in its representation of Settlement Class Members ("Class Members") is fair and reasonable.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    <u>INTRODUCTION</u>

Lead Counsel for the Court-appointed Lead Plaintiff and the proposed Settlement Class[1] respectfully submits this memorandum of points and authorities in support of its motion for (i) an award of attorneys' fees in the amount of 25%, or $3,500,000 of the Settlement Fund (representing a *.4 negative multiplier* to counsel's time); (ii) reimbursement of $576,161.71 in litigation expenses that were reasonably and necessarily incurred by Lead Counsel in prosecuting and resolving this Action; and (iii) reimbursement of costs and expenses of $15,000 to Lead Plaintiff for its representation of Class Members throughout the course of this Action.

Through the extensive efforts of Lead Plaintiff and Lead Counsel after approximately four years of hard-fought litigation, Lead Counsel secured an all-cash Settlement of $14,000,000 on behalf of Class Members. The Settlement is an excellent recovery at any stage of the litigation, representing approximately *twice* the median percentage of recovery for similarly sized cases of maximum theoretical damages. *See* Hopkins Decl. at ¶8-9. The Settlement result is even more remarkable considering that the Honorable Lucy Koh dismissed one of the two alleged corrective disclosures with prejudice. *Id*. at ¶26. With respect to the sole surviving corrective disclosure, the Settlement represents a percentage of recovery *over* twice that of similarly sized securities cases. *Id*. at ¶9. Moreover, as detailed *infra*, Defendants raised credible loss causation arguments as to the sole remaining corrective disclosure, requiring a disaggregation analysis. *Id*. at ¶¶50-52. Lead Plaintiff's damages expert has preliminary determined the most likely recoverable damages relating to this corrective disclosure range from $22.1 to $63.5 million on a FIFO bases (or $19.5 to $55.8 million on a LIFO basis). *Id*. at ¶52; Declaration of Kenneth N. Kotz ("Kotz Decl.", attached to Hopkins Decl. as Exhibit 4) at ¶14. After disaggregation, this Settlement represents *22% to 63.3%* of such damages on a FIFO basis (or 25% to 71.8% on a LIFO basis), which is up to approximately *eight* times the median percentage of recovery for similarly sized

---

[1] Unless otherwise defined herein, capitalized terms have the same meanings as in the Stipulation of Settlement (ECF 195-3) and the exhibits appended thereto.  Unless otherwise indicated, all emphasis has been added and all internal citations and quotation marks have been omitted.

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -1-

securities fraud cases from 2014 to 2022 and *twelve* to *thirty-five* times higher than the median percentage of recovery for securities fraud cases in 2023. *See* Hopkins Decl. at ¶46.

At all times, Lead Counsel remained dedicated to achieving a result in Class Members' best interests—and the Settlement would not have been achieved without Lead Counsel's tireless pursuit, skill, and relentless advocacy on behalf of Class Members. In litigating this Action, Lead Counsel expended substantial resources –16,295 hours in professional time, equating to a lodestar of $8.5 million, and over $576,161.71 in expenses—all without any assurance of recovery. As compensation, Lead Counsel requests that the Court award attorneys' fees of 25% (or $3.5 million) of the Settlement Amount—the Ninth Circuit's fee percentage benchmark.

Lead Counsel's fee request is reasonable, particularly considering Lead Counsel's extensive efforts and credible risks presented by Defendants. *See generally* Hopkins Decl. For example, Lead Counsel (i) filed *three* amended complaints, including a 116-page Third Amended Complaint with a 98-page appended false statement chart, (ii) briefed two motions to dismiss, (iii) drafted and prepared a motion for class certification, complete with an expert report on market efficiency and Lead Plaintiff's proposed damages methodology, (iv) reviewed nearly one million pages of documents produced by Defendants and third-parties, many of which were highly technical documents dealing with complicated medical studies and analysis concerning Cushing's Syndrome ("CS"), efficacies of potential treatments, and pertinent FDA regulations, requiring expert analysis, (v) defended the depositions of Lead Plaintiff's expert, as well as a former Corcept employee, (vi) retained and consulted with numerous experts, including those on CS, the marketing of pharmaceuticals and related FDA regulations, market efficiency, loss causation, and damages, and (vii) participated in *three* arm-length mediation sessions before Michelle Yoshida, Esq. of Phillips ADR Enterprises LLC. *See* Hopkins Decl. at ¶¶6, 7, 30.

The reasonableness of Lead Counsel's fee request is underscored by the many serious risks Lead Plaintiff would have faced at class certification, summary judgment, trial, and beyond. As set forth more fully in the Hopkins Declaration, in addition to the loss causation challenges to the sole surviving corrective disclosure, Defendants would raise credible arguments with respect to falsity and scienter. For example, Defendants would argue with respect to falsity and scienter, *inter alia*, that there were no

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -2-

marketing materials produced in discovery where any individual defendant explicitly instructed Corcept sales personnel to engage in off-label marketing practices. *Id*. at ¶¶53-54. Defendants would also argue that doctors had inherent discretion in deciding to prescribe Korlym, that the FDA reviewed Corcept's marketing materials and did not object, and that, similarly, the DOJ has never brought an action against Defendants despite serving Corcept with a subpoena in November 2021, and that hypercortisolism, which is used in Corcept's marketing materials, and CS, for which Korlym is sometimes an appropriate treatment, are the same. *Id*. at ¶¶53, 55-56. Defendants would also raise credible arguments with respect to class certification, including that the challenged statements were too generic to have impacted the price of Corcept's securities, which argument is bolstered by the Second Circuit's recent decision in *Arkansas Tchr. Ret. Sys. v. Goldman Sachs Group, Inc.*, 77 F.4th 74, 81 (2d Cir. 2023) decertifying a class based on similar arguments. *Id*. at ¶¶57-58.

Additionally, Lead Counsel's lodestar is more than twice the requested attorneys' fees and results in a ***negative multiplier* of .4** to Lead Counsel's time. Given the recovery obtained, the amount, complexity, and risk of the work involved during the pendency of the Action, the skill and expertise required to prosecute and resolve the claims asserted, and the substantial time and risks that Lead Counsel undertook in this Action, Lead Counsel respectfully submits that its fee request for 25% ($3,500,000) of the Settlement Fund is fair and reasonable in this case under the applicable legal standards, including the Ninth Circuit's "benchmark" award of 25% in common fund cases. *Id*. at ¶87.

Lead Counsel also submits that the request for reimbursement of $576,161.71 in litigation expenses is reasonable and that such expenses were necessary to the successful prosecution of this Action. Moreover, the requested expense reimbursement is approximately $400,000 (or 41%) *less* than the $975,000 maximum expenses stated in the Notice. Further, as set forth in the Declarations of James L. Ferraro ("Ferraro Decl." or "Ferraro Declaration"), attached to the Hopkins Decl. as Exhibit 2, Lead Plaintiff approves of Lead Counsel's fee and expense request as fair and reasonable in light of the work performed on behalf of Lead Plaintiff and the Class.

Finally, as set forth in the Ferraro Decl., Lead Plaintiff, an accomplished class and mass action attorney with forty years of experience, seeks reimbursement of Lead Plaintiff's costs and expenses,

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -3-

including lost wages, incurred during the Action under 15 U.S.C. § 78u-4(a)(4). Lead Plaintiff spent approximately 75 hours assisting Lead Counsel in this Action, representing lost wages of $90,000 at Lead Counsel's hourly rate of $1,200. To compensate Lead Plaintiff for its reasonable costs and expenses, Lead Plaintiff respectfully requests it receive a $15,000 partial reimbursement of its lost income, representing a reduced hourly rate of $200 per hour. The fact that, to date, no objections have been filed with respect to any aspect of the Settlement, including the requests for attorneys' fees, reimbursement of litigation expenses, and award of costs and expenses to Lead Plaintiff, supports approval of the requested fees and expense awards.

## II.   PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

The relevant history and facts are set forth in Lead Plaintiff's Unopposed Motion for Final Approval of Proposed Class Action Settlement ("Final Approval Motion"). *See* Procedural Guidance for Class Action Settlements ("Northern District Guidelines"), Final Approval Motion, §2.

## III.   ARGUMENT

### A.  The Requested Attorneys' Fees are Fair and Reasonable and Should be Approved

It is well settled in the Ninth Circuit that district courts have the discretion to apply either the percentage-of-recovery method or the lodestar method in determining attorneys' fees in a common fund case. *Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) ("WPPSS"). "The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *2 (N.D. Cal. June 27, 2017) (Donato, J.); *See also In re ECOtality, Inc. Sec. Litig.*, 2015 WL 5117618, at *3-4 (N.D. Cal. Aug. 28, 2015) (in a common fund case, "the court has discretion to award attorneys' fees using either the lodestar method or the percentage of the fund approach…[t]he percentage of the [fund is] the typical method"); *In re Omnivision Texchs., Inc*., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("[U]se of the percentage method in common fund cases appears to be dominant" in this Circuit and its "advantages…have been described thoroughly by other courts.").

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -4-

Nevertheless, in employing the percentage-of-recovery method, courts often perform a lodestar cross-check on the reasonableness of the requested fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (affirming use of percentage method to calculate attorneys' fees and application of lodestar method as cross-check); *Garcia v. Schlumberger Lift Sols.*, 2020 WL 6886383, at *19 (E.D. Cal. Nov. 24, 2020), *report and recommendation adopted*, 2020 WL 7364769 (E.D. Cal. Dec. 15, 2020) (same). The PSLRA also contemplates that fees be awarded on a percentage basis, authorizing attorneys' fees and expenses to counsel that do not exceed "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6); *see also In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014) ("'Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.'"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005), as amended (Feb. 25, 2005) ("[T]he percentage-of-recovery method was incorporated in the [PSLRA].").

While the ultimate determination of an appropriate fee award rests within the sound discretion of the district court, *see Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012), "[t]his circuit has established 25% of the common fund as a benchmark award for attorney fees." *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003). The benchmark is a starting point, as "the district court should be guided by the fundamental principle that fee awards out of common funds be 'reasonable under the circumstances.'" *WPPSS*, 19 F.3d at 1296. Ninth Circuit courts consider the following factors when reviewing a fee request: 1) the results achieved; 2) awards in similar cases; 3) the risk of litigation; 4) the skill required and the quality of the work; 5) the contingent nature of the fee and the financial burden carried by the plaintiffs; 6) the reaction of the class to the fee and expense request; and 7) whether the percentage appears reasonable in light of a lodestar cross-check. *Vizcaino*, 290 F.3d at 1048-50.

Each of these factors supports approval of the requested award of attorneys' fees.

**B.  The Requested Fee is Consistent with the Benchmark in the Ninth Circuit**

Lead Counsel seeks a fee equal to 25% of the Settlement Fund, or $3.5 million, consistent with Ninth Circuit's benchmark in common fund cases. *In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *3 (Ninth Circuit applies "a twenty-five percent benchmark" in percentage of the fund cases).

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -5-

Lead Counsel's 25% fee request is also well within the range of—and below—percentage fees that courts in this Circuit have awarded in other complex class actions. *See, e.g., In re Capacitors Antitrust Litig.*, 2023 WL 2396782, at *1-*2 (N.D. Cal. Mar. 6, 2023) (Donato, J.) (awarding 40% of $165,000,000 partial settlement, resulting in cumulative 31% award of total $604,550,000 settlement); *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (awarding 33% of 22.25 million settlement in securities case and collecting cases awarding same); *In re Lenovo Adware Litig.*, 2019 WL 1791420, at *6 (N.D. Cal. Apr. 24, 2019) (awarding 30% of $8.3 million settlement); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (awarding 33% of $12 million settlement); *Fleming v. Impax Lab. Inc.*, 2022 WL 2789496, at *8-9 (N.D. Cal. Jul. 15, 2022) (approving fee award of 30% of $33 million settlement fund); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorneys' fee award of 33% of a $14.8 million cash settlement); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving a fee award of one-third of a $12 million settlement fund); *In re Tezos Sec. Litig.*, No. 3:17-cv-06779-RS, slip op. at 2 (N.D. Cal. Aug. 28, 2020) (ECF No. 262) (awarding 33% of $25 million recovery in securities action); *Vataj v. Johnson*, No. 4:19-cv-06996, Dkt. 137, at 13-17 (N.D. Cal. Nov. 5, 2021) (awarding fees of 25% of $10 million settlement fund); *In re Vaxart, Inc. Sec. Litig.*, No. 3:20-cv-05949, Dkt. 274 (N.D. Cal. Jan. 25, 2023) (similar).

Applying each of the below factors confirms that the requested 25% fee is fair and reasonable.

**1. Lead Counsel Obtained a Favorable Result for the Class**

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Foremost among these considerations . . . is the benefit obtained for the class."); *Azar v. Blount Int'l., Inc.*, 2019 WL 7372658, at *10 (D. Or. Dec. 31, 2019) ("The most critical factor in granting attorney's fees is the overall result and benefit to the class."). The recovery achieved in this Action, a $14 million all-cash Settlement Fund, is a favorable result that will provide the Class with an immediate and certain benefit. Lead Plaintiff's damages consultant has estimated the *maximum theoretical* damages in this Action, including the January 31 corrective disclosure dismissed from the case, is approximately $185.2 million if calculated on a FIFO

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -6-

basis and $161.4 million if calculated on a LIFO basis. Hopkins Decl. at ¶44. The $14 million recovery represents approximately 8% of *theoretical* damages on a FIFO basis (or 9% on a LIFO basis). This recovery, alone, is demonstrably fair and approximately *twice* the median percentage of recovery for similarly sized cases in both 2023 and from 2014 through 2022, as reported by Cornerstone Research. *See* L.T. Bulan, L.E. Simmons, *Securities Class Action Settlements, 2023 Review and Analysis*, Cornerstone Research (2024), at 6 (stating that the median comparable securities class action settlements in Rule 10b-5 cases in 2023 and in 2014 – 2022 resulted in a recovery of 3.5% and 4% of estimated damages, respectively) ("Cornerstone Research") (attached to Hopkins Decl. as Exhibit 5); *see also* Edward Flores and Svetlana Starykh*, Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review*, NERA at 25-26, Figures 21, 22 (Jan. 23, 2024) (median ratio of settlement to investor losses for comparable securities class actions was 2.9% from January 2014 – December 2023 and was 1.8% overall in 2023) ("NERA") (attached to Hopkins Decl. as Exhibit 6).

However, the *maximum theoretical* aggregate damages includes the January 31, 2019 corrective disclosure that the Court dismissed, twice. ECF 145. Limited to the only surviving corrective disclosure, Lead Plaintiff's damages consultant has estimated the *maximum theoretical* damages in this Action is approximately $120.3 million if calculated on a FIFO basis and $105.4 million if calculated on a LIFO basis, representing approximately 12% and 13% of the maximum theoretical aggregate damages, respectively. Hopkins Decl. at ¶45. These recoveries are *more than double* recoveries in similar securities fraud class actions. *See* Cornerstone Research at 6; NERA at 25-26.

The Settlement represents a particularly favorable result for the Class considering Defendants' credible arguments that damages must be further reduced to reflect that certain negative information in the SIRF Report is unrelated to the alleged off-label marketing scheme and must be disaggregated from Lead Plaintiff's damages estimates. *See* Section III(B)(2), *infra*. After disaggregation, Plaintiff's damages consultant estimates damages ranging from $22.1 to $63.5 million on a FIFO basis (or $19.5 to $55.8 million on a LIFO basis), which is *22% to 63.3%* of the most likely recoverable damages (or 25% to 71.8% on a LIFO basis). Kotz Decl. at ¶14. This recovery represents up to approximately *eight* times the median percentage of recovery for similarly sized securities fraud cases from 2014 to 2022

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -7-

(Cornerstone Research at 6) and is *twelve* to *thirty-five* times higher than the median percentage of recovery for securities fraud cases in 2023 (NERA at 26). *See* Hopkins Decl. at ¶46.

Thus, the Settlement represents an excellent result for Class Members at any stage of the litigation and exceeds other comparable securities recoveries. *See Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (granting final approval of $10 million settlement constituting 2% of estimated damages); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *9 (N.D. Cal. Jul 22, 2019) ($7 million settlement recovering between 5% and 9.5% of estimated maximum non-disaggregated damages approved); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving $900,000 settlement representing "a recovery of 1.99% of total estimated damages" noting that "[o]ther courts have found similar recoveries to be fair and reasonable."); *McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate).

## 2. Litigation of this Securities Action Involved Significant Risks

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly [in] a case involving complicated legal issues, is a significant factor in the award of fees." *Weitzke v. CoStar Realty Info, Inc.*, 2011 WL 817438, at *6 (S.D. Cal. Mar. 2, 2011); *see also WPPSS*, 19 F.3d at 1300; *In re Nexus 6P Prods. Liab. Litig.*, 2019 WL 6622842, at *12 (N.D. Cal. Nov. 12, 2019). As courts recognize, "securities actions are highly complex[,]" "notably difficult[,]" and "notoriously uncertain." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018); *Cheng Jianchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019). "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). Accordingly, in securities class actions, fee awards often exceed the 25% benchmark recognized in the Ninth Circuit. *Omnivision*, 559 F. Supp. 2d at 1047. This securities Action is no exception and was fraught with significant risks posed by Defendants' numerous credible arguments.

**First**, Defendants have argued successfully with respect to the January 31, 2019 corrective disclosure, and would continue to argue with respect to the surviving January 25, 2019 corrective

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -8-

disclosure that, even if Lead Plaintiff could establish liability, the Class Members will be unable to show what part of the stock-price decline is attributable to the alleged fraud (if any) as opposed to other confounding information. Hopkins Decl. at ¶¶50-52. To succeed at trial "a plaintiff [must] prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

Here, the sole surviving corrective disclosure is the January 25, 2019 SIRF Report, which Lead Plaintiff alleged disclosed Corcept's off-label marketing scheme. Defendants have confirmed that they would challenge loss causation with respect to the SIRF Report. For example, Defendants contend that any impact the SIRF Report had on Corcept's stock price was due to disclosures of unrelated information that did not concern off-label marketing of Korlym. For example, the SIRF Report alleged that: 1) the FDA found that "Korlym's trial design was flawed without the testing of an approved comparator drug…"; 2) Corcept "withdrew its application for Corluxin (a renamed Korlym)" in Europe, citing "strategic business reasons for ending the process"; 3) There were "103 deaths reported for Korlym since 2012"; and 4) Korlym is expensive where an estimated "yearly cost would be $308,000." Hopkins Decl. at ¶51. Giving some credence to Defendants' challenge, the Honorable Judge Koh acknowledged that the disclosure of deaths related to Korlym were unrelated to the alleged fraud because they did not mention Corcept's off-label marketing or sales practices. *See* ECF 145 at 45. These arguments, if successful, would establish that Corcept's price dropped due to news that was unrelated to the misstatements alleged in the case, further diminishing damages available to Class Members.

**Second**, Defendants disputed the falsity of the challenged statements. For example, while Lead Plaintiff argued Corcept's marketing materials contained implicit off-label marketing messages by inclusion of case studies using Korlym off-label, there were no marketing materials produced in discovery where any Individual Defendant explicitly instructed Corcept sales personnel to prescribe Korlym off-label as a "bridge to surgery" or first-line therapy. *See* Hopkins Decl. at ¶54. Likewise, while Lead Plaintiff contended that Corcept impliedly marketed Korlym for off-label CS uses, there is no specified testing regiment for diagnosing CS. Instead, it is within each doctor's discretion to decide which tests to run, whether to run multiple tests—and how many, and whether to prescribe Korlym.

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -9-

These difficulties would present significant hurdles to winning summary judgment or trial. *Id*. at ¶55.

Further, to refute the contention that it marketed Korlym off-label, Corcept repeatedly asserted that the FDA was aware of its marketing practices and never objected to them. Evidence to date shows that Corcept did send its marketing materials to the FDA and, to Lead Plaintiff's knowledge, the FDA has not objected to them as being off-label. *Id*. at ¶56. Defendants also contend that hypercortisolism, which is used in Corcept's marketing materials, and CS, for which Korlym was sometimes an appropriate treatment, are the same. These arguments would further complicate any potential victory at summary judgment or trial. *Id*. at ¶53. Additionally, neither the DOJ, who subpoenaed Corcept in 2021, nor the SEC, has filed an action against Corcept concerning off-label marketing. *Id*. at ¶33.

**Third,** Defendants vigorously disputed that Lead Plaintiff would be unable to establish scienter at summary judgment and trial. Indeed, while Lead Plaintiff's allegations may have been sufficient at the pleading stage, to date Lead Plaintiff has not received any documents establishing that any Individual Defendant instructed Corcept employees to engage in off-label marketing. Hopkins Decl. at ¶54. Nor has Lead Plaintiff received evidence that any physician complained to any defendant about off-label marketing. *Id*. To the contrary, some documents produced establish that Corcept executives instructed employees to keep Korlym marketing to on-label uses. *Id*.; *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (scienter is "difficult to establish at trial.").

**Fourth**, Defendants stated that they would also challenge the efficiency of the market for Corcept's securities at class certification, potentially precluding Lead Plaintiff's ability to achieve and maintain class certification through trial. Hopkins Decl. at ¶¶57-58. For example, Defendants have contended (among other things) that the challenged statements were too generic to have impacted the price of Corcept's securities. *Id*. Bolstering the argument, Lead Plaintiff is aware of only four non-duplicative media and analyst reports explicitly commenting on the alleged false statements or relevant disclosures in the SIRF Report, undermining materiality, loss causation, and price impact. *Id*. Further, Defendants would challenge market efficiency, arguing, *inter alia*, that since the SIRF Report relies entirely on information that was publicly available to the market prior to January 25, 2019, such public allegations were already reflected in the Company's stock price. *Id*.

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -10-

Indeed, the Second Circuit's recent decision in *Arkansas Teacher Retirement System v. Goldman Sachs Group, Inc.*, 77 F.4th 74, 81 (2d Cir. 2023) heightened these very same concerns, where the court, after approximately 13 years of litigation, decertified the class and effectively ended the case, finding statements about Goldman's business practices and approach to conflicts-of-interest management were too "generic" to have impacted Goldman's stock price, and there was an insufficient nexus between the front-end statement and back-end price decline. *Id*. at 105. ("Defendants have demonstrated, by a preponderance of the evidence, that the misrepresentations did not impact Goldman's stock price, and, by doing so, rebutted *Basic's* presumption of reliance."). As Defendants contend, the challenged statements were too generic to have impacted Corcept's stock price, Defendants would have challenged price impact at class certification, summary judgment, and trial. Hopkins Decl. at ¶¶57-58. While Lead Plaintiff is confident that a class would have been certified, there was an ongoing risk that Defendants may successfully move to decertify the class prior to trial or on appeal. *See* Rule 23(c)(1) (a class may be decertified at any time prior to a decision on the merits) *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time.").

Even if the Action did survive summary judgment, despite each of Defendants' contentions, the material risk remains that Lead Plaintiff's claims might be dismissed after trial or appeals. *See* Hopkins Decl. at ¶58. Even if Lead Plaintiff obtained a favorable jury verdict, it would face the prospect of appeals which might take years to resolve and ultimately result in an appellate decision in Defendants' favor. It is therefore entirely possible that even if Lead Plaintiff was able to secure a judgment against Defendants, Lead Plaintiff might ultimately recover nothing, and the Class would receive no compensation from the litigation. *See Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-DOC-SHK, ECF 913 (C.D. Cal. Aug. 3, 2022) (granting final approval of securities class action settlement 2.5 years after a February 4, 2019 jury verdict in plaintiff's favor following trial); *In re Apollo Grp., Inc. Sec. Litig.*, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) rev'd and remanded, 2010 WL 5927988 (9th Cir. June 23, 2010) (granting motion for a judgment as a matter of law, overturning $277 million verdict in favor of plaintiffs based on insufficient evidence of loss causation).

Thus, when negotiating the Settlement, Lead Counsel carefully examined the continued time and

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -11-

expense of additional litigation as well as Lead Plaintiff's likelihood of success on the merits, the maximum provable damages, and the likelihood of obtaining a larger settlement after continued litigation. Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendants, including, *inter alia*: 1) taking *fifty-eight* remaining depositions, of which at least twenty-eight would be in-person; 2) the preparation of opening and rebuttal expert reports and expert depositions concerning CS, FDA marketing regulations, market efficiency, damages, and loss causation; 3) briefing motions to compel, class certification, and cross motions for summary judgment; and 4) persuasively explaining these complicated and confusing issues to jurors. In short, the $14 million Settlement, achieved in the face of these significant risks, amply supports the requested 25% fee award. *See, e.g., In re Amkor Tech. Inc. Sec. Litig.,* 2009 WL 10708030, at *2 (D. Ariz. Aug. 4, 2008) (approving fee award of 25% where class counsel had "borne all the ensuing risk – including the risk of affirmance on Plaintiffs' appeal, surviving dispositive motions, obtaining class certification, proving liability, causation and damages, prevailing in a 'battle of the experts,' and litigating the Action through trial and possible appeals").

### 3. Lead Counsel Provided Quality Representation

The third factor to consider in determining what fee to award is the skill required and quality of work performed. *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19-20 (C.D. Cal. June 10, 2005); *In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *5 (N.D. Cal. June 27, 2017). "The 'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016). From the outset, Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the Settlement Class. The quality of Lead Counsel's representation supports the reasonableness of the requested fee. Lead Counsel is a national law firm with extensive experience representing investors in complex securities class actions. *See* Hopkins Decl. at ¶¶ 92-94. Lead Counsel's experience and skill were further demonstrated by the zealous and effective prosecution of this Action, as set forth *supra*.

"In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully." *In re*

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -12-

*Am. Apparel, Inc. Shareholder Litig.*, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014). Defendants' counsel, Quinn Emanuel Urquhart & Sullivan, LLP, is widely renowned for its securities litigation practice and the attorneys who represented Defendants in this matter were formidable opponents who worked tirelessly on behalf of their clients and mounted strong defenses. To combat such opponents, Lead Counsel was required to litigate at a very high level of skill, efficiency, and professionalism at every stage of the proceedings. *See id.*; *HCL Partners Ltd. P'ship v. Lead Wireless Int'l, Inc.*, 2010 WL 4156342, at *2 (S.D. Cal Oct. 15, 2010) (approving requested fees when "Lead Counsel has extensive experience in litigating securities class actions, and Defendants were represented by two law firms with nationwide and international reputations for providing thorough and competent representation[]").

Despite the formidable opposition faced throughout the litigation, Lead Counsel was able to reach an agreement with Defendants on terms favorable to the Settlement Class. *See Felix v. WM. Bolthouse Farms, Inc.*, 2020 WL 68577, at *7 (E.D. Cal. Jan. 7, 2020) ("the proposed settlement provides for 'substantial, prompt, and efficient relief' for the class. . . .Therefore, this factor weighs in favor of approval of the Settlement.").

**4.  The Contingent Nature of the Case and Financial Burden Carried by Lead Counsel**

In addition to the risks associated with complex litigation, "the risk of non-payment or reimbursement of expenses [in cases undertaken on a contingent basis] is a factor in determining the appropriateness of counsel's fee award." *Heritage Bond*, 2005 WL 1594403, at *21; *see also Flores v. Dart Container Corp.*, 2021 WL 1985440, at *9 (E.D. Cal. May 18, 2021) ("Indeed, 'courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.'") Courts in this Circuit have found that "the importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *Omnivision*, 559 F. Supp. 2d at 1047; *see also WPPSS*, 19 F.3d at 1299 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.").

"The risk of no recovery in complex cases of this sort is not merely hypothetical." *Savani v. URS*

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -13-

*Pro. Sols. LLC*, 2014 WL 172503, at *5 (D.S.C. Jan. 15, 2014). There have been many class actions in which plaintiff's counsel took on the risk of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received no remuneration whatsoever despite their diligence and expertise. Indeed, Levi & Korsinsky knows this risk all too well. Last year, in *In re Tesla Inc. Securities Litigation*, Case No. 18-cv-4865-EMC (N.D. Cal.), a case that Levi & Korsinsky prosecuted, after the court ruled in plaintiffs' favor on the issues of falsity and scienter at summary judgment, the jury returned a verdict at trial in favor of the defendants. *In re Tesla Inc. Securities Litigation*, Case No. 18-cv-4865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023). Plaintiffs' counsel, thus, incurred millions of dollars in out-of-pocket expenses and over 57,000 hours of work, yet recovered nothing. Hopkins Decl. at ¶101; s*ee also In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (summary judgment granted to defendants after eight years of litigation, during which plaintiff's counsel incurred over $7 million in out-of-pocket expenses and over 100,000 hours of work, representing a lodestar of approximately $40 million); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (holding similarly).

When Lead Counsel undertook representation of Lead Plaintiff in this complex securities class action, it was aware of the risk of nonpayment after many years of litigation. *See* Hopkins Decl. at ¶98. Despite this risk, Lead Counsel prosecuted this Action on a fully contingent fee basis and has not received any compensation for its services or reimbursement for the expenses it has incurred over the past five years. *Id*. ¶97. In order to reach the Settlement for the benefit of the Class, Lead Counsel has had to work thoroughly and diligently, investing significant time and energy into the litigation of this Action. Through these efforts, Lead Counsel has incurred approximately 16,295 hours of attorney and staff time and $576,161.71 in expenses without reimbursement from the inception of this case through January 4, 2024. *See id*. at ¶¶87, 100. Additional (and uncompensated) work in connection with the Settlement and claims administration already has been undertaken since the Court preliminarily approved the Settlement, and more will be required going forward. "This type of 'substantial outlay, when there is a risk that [no money] will be recovered, further supports the award of the requested fees.'" *Am. Apparel*, 2014 WL 10212865, at *22; *see also In re DJ Orthopedics, Inc. Sec. Litig.*, 2004 WL

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -14-

1445101, at *7 (S.D. Cal. June 21, 2004) (25% fee reasonable when counsel litigated the case on a contingency fee basis because, "Plaintiffs' counsel conducted all of these activities with no guarantee of compensation for the investment of time and resources[]"); *Perez v. Rash Curtis & Assocs.*, 2020 WL 1904533, at *17 (N.D. Cal. Apr. 17, 2020) (that "any recovery in this matter was based on contingency fee, and that there was no guarantee of repayment" weighed in favor of attorneys' fees 25% or greater).

In addition to the time and expense incurred during the litigation, the fact that the lawyers working on this Action have foregone other business opportunities further supports the reasonableness of the requested fee. *See Vizcaino*, 290 F.3d at 1050 (considering opportunity cost); *McPhail v. First Command Fin. Plan., Inc.*, 2009 WL 839841, at *7 (S.D. Cal. Mar. 30, 2009) (approving 25% fee where "Class Counsel took this case under a contingent fee basis, advanced all costs in the litigation, and had to forego other financial opportunities[]"); *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *9 (N.D. Cal. July 11, 2014) (28% fee reasonable where "plaintiffs' counsel took this case on a contingent fee basis and had to forego other financial opportunities to litigate it").

### 5. The Fee is Within the Customary Fee in Similar Actions

Lead Counsel's fee request of $3,500,000, or 25% of the Settlement Fund, comports with awards granted in similar actions in the Ninth Circuit and is warranted under the facts of this case. As discussed in Section III(B), *infra*, the 25% benchmark fee request is consistent with fee percentages awarded in comparable settlements. As further addressed in Section III(B)(7), *infra*, the resulting *negative* multiplier of .4 on Lead Counsel's lodestar is within the range of lodestar multipliers applied in cases of this nature. Moreover, while courts routinely award interest on attorneys' fees, Lead Counsel is not requesting to be paid any interest here so all interest earned can be awarded to the Settlement Class.

### 6. Reaction of Class Members to Date Supports the Fee Request

Courts also consider the reaction of the class when deciding a reasonable fee award. In accordance with the Court's Preliminary Approval Order, 17,385 copies of the Postcard Notice have been disseminated to all Settlement Class Members who could be identified with reasonable effort. *See* Declaration of Kathleen Schumacher Regarding Notice Dissemination, Publication, and Requests for Exclusion Received ("Schumacher Decl.", attached to Hopkins Decl. as Exhibit 1), at ¶10. Moreover,

the Summary Notice was published in *Investor's Business Daily* and over *PR Newswire* on February 5, 2024. Hopkins Decl. at ¶61; Schumacher Decl. at ¶11. Among other things, the long-form Notice, available on this Action's case-specific settlement website (www.CorceptSecuritiesLitigation.com), described the Action and the proposed Settlement, as well as Lead Counsel's intent to request an award of attorneys' fees of no more than 25% of the Settlement Fund or approximately $3,500,000 and litigation expenses of not to exceed $975,000. The deadline for Settlement Class Members to object to the Settlement and/or Lead Counsel's fee application or seek exclusion from the Settlement Class is May 13, 2024, so that members of the Settlement Class have 60 days to consider this fee application.

To date, there have been no objections to the amount of attorneys' fees requested or reimbursement of expenses. Schumacher Decl. at ¶15. Moreover, Lead Plaintiff, who is a Class Member and class action and mass-tort attorney with forty years of experience, closely scrutinized the fee and expense requests and supports them. Ferraro Decl., at ¶¶16-17. Thus, this factor supports granting the motion. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (no objections from the settlement class supports 30% fee award); *Omnivision*, 559 F. Supp. 2d at 1048 (only three objections supports 28% fee award).[2]

### 7. The Requested Fee is Reasonable Under the Lodestar Cross-Check

The Northern District Guidelines state that "[a]ll requests for approval of attorneys' fees must include detailed lodestar information, even if the requested amount is based on a percentage of the settlement fund" and that "the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information may be sufficient." "'[L]odestar' is calculated by multiplying the number of hours. . . reasonably expended on the litigation by a reasonable hourly rate." *Zynga*, 2016 WL 537946, at *18. Counsel's lodestar "provides a check on the

---

[2] Should any objections be received, Lead Counsel will address them in its reply papers.

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -16-

reasonableness of the percentage award. *Immune Response*, 497 F. Supp. 2d at 1176.

"Several circuit courts have encouraged district judges to use the lodestar method as a cross-check on proposed POF awards. . . When the lodestar is used in this way, the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *accord Volkswagen* Fee Order, 2017 WL 1047834, at *5 n.5 (overruling objection that "the information provided in support of Class Counsel's lodestar amount as inadequate" because "it is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records'") (alterations and ellipsis in original); *Hefler*, 2018 WL 6619983, at *14 (confirming that "'trial courts need not, and indeed should not, become green-eyeshade accountants'" in context of lodestar cross check, and noting that "the Court seeks to 'do rough justice, not to achieve auditing perfection'"); *Lesevic v. Spectraforce Techs. Inc.*, 2021 WL 1599310, at *3 (N.D. Cal. Apr. 23, 2021) (for the lodestar cross-check, "courts may do a rough calculation 'with a less exhaustive cataloging and review of counsel's hours.'")

Here, Lead Counsel devoted a significant amount of time to the prosecution of this case for the benefit of the Class, including, *inter alia*: conducting a thorough investigation into the relevant facts; (ii) drafting the three amended complaints; (iii) reviewing nearly one million pages of documents produced by Defendants and third parties—the majority of which concerned complicated medical studies, testing for and diagnosing CS, FDA regulations, lengthy prescription spreadsheets classifying Korlym prescriptions, and other issues requiring expert analysis; (iv) consulting with several industry and damages and loss causation/market efficiency experts; (v) defending the depositions of Plaintiff's expert and confidential witness; and (vi) engaging in three rounds of mediation and negotiations to successfully reaching a favorable Settlement. *See* Hopkins Decl. at ¶6. Lead Counsel will also devote additional hours and resources to this Action on an ongoing basis, including: preparing for and participating in the Final Settlement Hearing; assisting potential Class Members with the completion and submission of their Proof of Claim forms; monitoring the claims process; corresponding with the

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -17-

Claims Administrator; and supervising the distribution of the Net Settlement Fund to Settlement Class Members, and preparing any necessary further submissions to the Court.

As set forth in the lodestar reports submitted herewith, Lead Counsel has expended approximately 16,295 hours on this litigation through January 4, 2024, when the Court preliminarily approved the Settlement, equating to a total lodestar of $8.5 million. *See* Hopkins Decl. at ¶87. Lead Counsel's lodestar represents *more than double* the requested fee award and results in a significant **negative "multiplier" of .4**. *Id.* Courts consider a negative multiplier, like the one here, presumptively reasonable because it means Lead Counsel is seeking to be paid "for only a portion of the hours that they expended on the action." *In re Amgen Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016); *see also Regulus Therapeutics*, 2020 WL 6381898, at *7 ("a multiplier less than 1.0 is below the range typically awarded by courts and is presumptively reasonable"). Therefore, the lodestar cross-check confirms that the request for $3,500,00 (25% of the Settlement Fund) is "presumptively" fair and reasonable. Indeed, courts in this Circuit frequently award multipliers of as much as four times lodestar. *See e.g., In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (noting that "[i]n the Ninth Circuit, a lodestar multiplier of around 4 times has frequently been awarded in common fund cases"); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D Cal. 2021) (awarding fee in $650 million common fund settlement representing 4.71 multiplier); *In re Verifone Holdings, Inc. Sec. Litig.*, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014) (noting "over 80% of multipliers fall between 1.0 and 4.0" and awarding fee reflecting 4.3 multiplier).

In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Lead Counsel here are highly regarded members of the bar with extensive expertise in complex litigation involving securities class actions. Hopkins Decl. at ¶¶92-93. Lead Counsel submits that the hourly billing rates of Lead Counsel here are fair and reasonable. Partners' rates are $900 to $1,050 per hour and associates' rates range from $495 to $675 per hour. *See* Declaration of Shannon L. Hopkins in Support of the Fee and Expense Application ("Hopkins Fee Decl.", attached to Hopkins Decl. as Exhibit

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -18-

3), at ¶5. In fact, Lead Counsel's rates have recently been approved in this District. *See In re Nutanix, Inc. Sec. Litig.*, No. 3:19-cv-01651, ECF 318-2, 138 (N.D. Cal. Oct. 6, 2023) (approving fee based on lodestar crosscheck consisting of Levi & Korsinsky's hourly rates of $900 to $1,050 for partners and $500 to $675 for associates); *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *8 (N.D. Cal. Mar. 2, 2022) (approving hourly rates of $765-$1,050 for partners and $425-$650 for associates as "in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation."); *see also Purple Mountain Trust v. Wells Fargo & Co.*, No. 3:18-cv-03948-JD, ECF 232-1 at 10, 243 (N.D. Cal. Sep. 26, 2023 (Donato, J.) (approving fee based on lodestar crosscheck consisting of hourly rates of $735 to $1,375 for partners and $250 to $550 for associates).

Similar or higher billing rates have been approved by other courts in this Circuit and are similar to, or less than, comparable rates in this district. *See e.g. Amgen Sec. Litig.*, 2016 WL 10571773, at *9 (approving rates of $750-$985 for partners and $300-$725 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following lodestar crosscheck and finding reasonable "billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates"); *see also Fleming v. Impax Laby's Inc.*, 2022 WL 278946, at *9 (N.D. Cal. July 15, 2022) (approving hourly rates of $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates and noting that such "billing rates [are] in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation"); *Hefler*, 2018 WL 6619983, at *14 (finding rates ranging from $650 to $1,250 for partners or senior counsel and from $400 to $650 for associates as reasonable).

The requested fee award, which represents *less than half* the time Lead Counsel devoted (and will continue to devote) to this Action, is fair and reasonable under the lodestar cross-check.

## C. The Litigation Expenses are Reasonable and were Reasonably Incurred

Lead Counsel also respectfully requests reimbursement of $576,161.71 for expenses reasonably incurred in prosecuting this Action. *See* Hopkins Decl. at ¶¶16, 100. This is approximately $400,000 (41%) less than the amount contained in the Notice and, to date, not a single class member has objected to Lead Counsel's request. "There is no doubt that an attorney who has created a common fund for the

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -19-

benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Heritage Bond*, 2005 WL 1594403, at \*23; *Ochoa v. McDonald's Corp.*, 2016 WL 8290114, at \*3 (N.D. Cal. Nov. 14, 2016) (Donato, J.) (noting that "expenses should be paid from the common fund because all class members should contribute their fair share of the costs of the litigation from which they benefitted"); *In re Capacitors Antitrust Litig.*, 2020 WL 6544472, at \*2 (N.D. Cal. Nov. 7, 2020) (Donato, J.) (finding "expenses [of approximately $9.5 million] were reasonably and necessarily incurred in the ordinary course of prosecuting this MDL case.").

The appropriate analysis applied in deciding whether expenses are compensable in a common fund case is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"). "To that end, courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation." *Zynga*, 2016 WL 537946, at \*22; *Rieckborn v.Velti PLC*, 2015 WL 468329, at \*22 (N.D. Cal. Feb. 3, 2015) (approving $219,469.67 in expenses primarily for "experts, consultants, and investigators" and "computerized factual and legal research and [] travel expenses"); *In re Robinhood Outage Litig.*, 2023 WL 5321525, at \*2 (N.D. Cal. Jul. 28, 2023) (Donato, J.) (awarding costs of approximately $1.1 million in unreimbursed litigation expenses, including "costs advanced in connection with consultants, legal research, court reporting services, copying and mailing, and other customary litigation expenses."). While courts routinely award interest on expense requests, Lead Counsel is not requesting to be paid any interest here so all interest earned can be awarded to the Settlement Class. *See In re Vocera Commc'ns, Inc. Sec. Litig.*, 2016 WL 8201593, at \*1 (N.D. Cal. July 29, 2016) (awarding "payment of litigation expenses in the amount of $382,010.861, plus interest at the same rate earned by the Settlement Fund"); *In re Hewlett-Packard Co. Sec. Litig.*, 2014 WL 12656737, at \*1 (C.D. Cal. Sept. 15, 2014) (similar, including payment of interest).

Lead Counsel has itemized the categories of expenses incurred and attested to their accuracy.

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -20-

*See* Hopkins Decl. at ¶¶109-110. Lead Counsel's expenses include, *inter alia* damages and merits consultant and expert fees, investigative fees, mediation fees, filing fees, process of service fees, electronic research, postage, and travel, all of which Lead Counsel believes were reasonable and necessary to adequately prosecute the claims in this Action. *See Id*. One of the more significant expenses incurred was the cost of the damages and merits consultants, which totaled $193,504.43. Lead Counsel retained damages experts to consult on market efficiency, loss causation, and class-wide damage calculations and to prepare the Plan of Allocation for the Settlement. *See* Hopkins Fee Decl. at ¶10(d). The damages consultants were necessary to, among other things, evaluate the efficiency of the market for Corcept securities, provide multiple damages analyses based on different potential class periods and disaggregation arguments for stock and options, and assist with how the Net Settlement Funds should be allocated among all Settlement Class Members in accordance with the legal principles guiding loss causation and damage calculations under the PSLRA. *See, e.g., Am. Apparel*, 2014 WL 10212865, at *29 ("To plead causation and damages adequately, and to arrive at an informed assessment concerning the reasonableness of the settlement and create a plan of allocation, class counsel needed to retain damages and loss causation experts.").

Likewise, Lead Plaintiff retained and consulted with three other experts with respect to, *inter alia* CS, endocrinology, the marketing of pharmaceutical drugs, and related FDA regulations, which were critical to Lead Counsel's case development and factual investigation, formulation of discovery requests, review of technical documents, and formulation of arguments in connection with mediation sessions and motion practice.

Relatedly, Lead Counsel also incurred investigative costs of $74,277.25 associated with its outreach to former Corcept employees and physicians knowledgeable about Corcept's off-label marketing. Lead Counsel retained two investigators for these efforts—one to contact former Corcept employees and one, a physician himself, to contact other physicians who Lead Counsel believed would be more likely to speak to another physician about the allegations in this Action.

To successfully prosecute the Action, Lead Counsel also had to secure independent legal representation totaling $154,547.40 for *eleven* confidential witnesses cited in the Third Amended

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -21-

Complaint that were either former Corcept employees or physicians with knowledge of Corcept's alleged off-label marketing scheme. Each of these witnesses was crucial to Plaintiff's ability to successfully prosecute the Action and Defendants served each with subpoenas for documents and for depositions, requiring their independent representation. Hopkins Fee Decl. at ¶10(g); *See, e.g.*, *In re U. S. Steel Consolidated Cases*, No. 2:17-cv-00579, ECF 346-8, 358 (W.D. Pa. Mar. 21, 2023) (approving reimbursement of $109,569.43 for legal representation provided to confidential witnesses); *In re Mindbody, Inc. Sec. Litig.*, No. 1:19-cv-08331, ECF 137-4, 144 (S.D.N.Y. Oct. 27, 2022) (approving reimbursement of $33,265.48 for legal fees of counsel for five potential witnesses who were former employees of Defendant Mindbody or sub-advisors for the co-lead plaintiffs, which witnesses were subpoenaed by defendants and asked to produce documents and appear for depositions). Indeed, each witness served responses and objections and produced documents. One witness even sat for a deposition.

Another significant expense was the mediator costs, which totaled $27,360. These costs are entirely reasonable given the caliber of Ms. Michelle Yoshida, Esq., and the incredible guidance and efforts she provided with respect to three separate mediation sessions throughout the course of this Action. Courts recognize that the assistance of a qualified mediator is often a prerequisite for settlement of a complex securities class action. *Moore v. IMCO Recycling of CA, Inc.*, 2005 WL 5887180, at *3 (C.D. Cal. Sept. 28, 2005) (recognizing the importance of mediation as a way to avoid trial and that awards of mediation expenses are "reasonably necessary to the conduct of litigation").

Lead Counsel's expenses also included computer research such as Lexis, Westlaw, and Capital IQ, totaling $8,259.22. Hopkins Fee Decl. at ¶10(e). Courts recognize that such expenses should be reimbursed. *See, e.g., In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1371 (N.D. Cal. 1996) ("Given the complexity of the issues, this Court does not doubt that computerized research played an essential role in the litigation at hand. The request for computerized legal expenses should be granted in full."); *Am. Apparel*, 2014 WL 10212865, at *29 (awarding expenses for online research).

The reaction of the Settlement Class to a proposed Settlement and expense request is also a relevant factor in approving the requested reimbursement of expenses. *See Omnivision*, 559 F. Supp. 2d at 1048. The Notice to the Class advised that Lead Counsel would seek reimbursement of up to $975,000

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -22-

for incurred litigation expenses. Hopkins Decl. at ¶113. To date there have been no objections to the fee and expense request. Schumacher Decl. at ¶15. Underscoring the reasonableness of the requested expense reimbursement is that it is approximately $400,000 *less* than the $975,000 maximum expenses in the Notice. Lead Counsel achieved this cost reduction on behalf of Class Members primarily by including hourly document review time in its lodestar calculations rather than as separately reimbursable expenses, as courts in this circuit permit. Because Lead Counsel's lodestar resulted in a negative multiplier of .9 even without inclusion of hourly document review time, including the hourly document review time in lodestar calculations has no negative implications to the Class Members' recovery and results in substantial expense savings to the Class. Moreover, Lead Plaintiff supports the fee and expense request. Ferraro Decl., at ¶¶15, 16.

Separately, in response to discussions with Lead Counsel regarding cost savings opportunities with respect to anticipated notice and administration expenses, and in an effort to expedite payments to Authorized Claimants, A.B. Data committed to capping total notice costs at $175,000 and providing Lead Counsel with a distribution declaration within four months of the claim filing deadline, or by September 13, 2024. *See* Schumacher Decl. at ¶17.

In sum, Lead Counsel respectfully submits that its fees, as well as the expenses for which Lead Counsel seeks reimbursement, were reasonable and necessary to prosecute this Action and reach the favorable Settlement. *See* Hopkins Decl. at ¶111. *Vincent v. Reser*, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013) (the cost of "three experts and the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation related expenses" approved); *Media Vision Tech.*, 913 F. Supp. At 1367-72 (reasonable costs related to retention of experts, investigator, photocopying, telephone, legal research fees, travel expenses, postage and filing fees may be reimbursed); *Harris*, 24 F.3d at 19 (prevailing plaintiff may be entitled to costs including, among other things, postage, investigator, copying costs, hotel bills, and meals that "would normally be charged to a fee paying client"); *Immune Response*, 497 F. Supp. 2d at 1177 (approving reimbursement request for meals, hotels, transportation, photocopies, postage, telephone, fax, filing fees, messenger and overnight delivery, online legal research, class action notices, experts, consultants, investigators, and mediation fees).

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -23-

**D.  The Requested Fee and Expense Award for Plaintiff is Reasonable**

Finally, Lead Counsel seeks an award in the amount of $15,000 for the Lead Plaintiff's costs and expenses pursuant to the PSLRA, 15 U.S.C. §77z-1(a)(4). The PSLRA provides for an award of "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. §77z-1(a)(4). Congress acknowledged "that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly." H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. (1995).

Lead Plaintiff's request here is justified for similar reasons. As set forth in the Ferraro Declaration, Lead Plaintiff conservatively estimates that it spent 75 hours of time in work directly related to the representation of the Class. *See* Ferraro Decl., at ¶13. Lead Plaintiff's work on behalf of the Class included: *inter alia*: (a) reviewing pleadings, motion to dismiss briefing, and material prepared in connection with Lead Plaintiff's opening class certification motion; (b) reviewing news and information about Corcept; (c) conferring with Lead Counsel on legal strategy, case status, discovery, and settlement negotiations, among other things; (d) providing written responses to Defendants' discovery requests and producing documents; and (e) participating in three mediations and evaluating the offers and counteroffers. *Id*.

Lead Plaintiff's contributions were particularly valuable in achieving the settlement given Lead Plaintiff's forty years of experience as a class action and mass torts litigator. *See* Ferraro Decl., at ¶9. Lead Plaintiff's specialized professional background allowed Lead Plaintiff to relentlessly and independently supervise the Action, evaluate settlement discussions, and monitor Lead Counsel's requests for attorneys' fees and litigation expenses. Hopkins Decl. at ¶116; *see also* Ferraro Decl., at ¶¶13-15. As elaborated in Lead Plaintiff's supporting declaration, Lead Plaintiff spent approximately 75 hours assisting Lead counsel in this Action, representing lost wages of $90,000 based on Lead Plaintiff's hourly rate of $1,200 per hour. To compensate Lead Plaintiff for its reasonable costs and expenses, Lead Plaintiff respectfully requests it receive a $15,000 partial reimbursement, representing a reduced hourly rate of $200 per hour for its lost income.

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -24-

Lead Plaintiff's requests for lost wages are well documented and consistent with other awards in this Circuit. *See In re Capacitors Antitrust Litig.*, 2023 WL 2396782, at *2 (N.D. Cal. Mar. 6, 2023) (Donato, J.) (approving service awards of $50,000 to two class representatives, $25,000 to a class representative, and $15,000 to a class representative); *Huntsman v. Sw. Airlines Co.*, No. 3:17-cv-03972-JD, ECF 57 (N.D. Cal. Oct. 4, 2019) (Donato, J.) (approving service award of $9,969.60 based upon 60 hours of lost wages at an hourly rate of approximately $166); *Purple Mountain Trust v. Wells Fargo & Co.*, No. 3:18-cv-03948-JD, ECF 233-1, 243 (N.D. Cal. Sep. 26, 2023) (Donato, J.) (awarding $9,794.98 for time and expenses incurred representing the class, including $2,250 compensation for the fund administrator's 15 hours spent at hourly rate of $150); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173 (S.D. Cal. 2007) (approving $40,0000 reimbursement representing lost wages of 200 hours at an hourly rate of $200, representing compensation as a CEO); *In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *8 (S.D. Cal. Mar. 17, 2021) (awarding class representative $25,000 for 70 hours of work, or approximately $357 per hour); *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, at *9 (S.D. Cal. Jun. 1, 2010) (approving $25,000 incentive award in securities action as "well within the acceptable range awarded in similar cases," noting lead plaintiff spent more than 165 hours); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1049 (N. D. Cal. 2008) (approving $29,913.80 incentive award); *Schulein v. Petroleum Development Cor.*, 2015 WL 12762256, at *2 (C.D. Cal. Mar. 16, 2015) (awarding $67,500 in reimbursement award to eight lead plaintiffs).

Accordingly, Lead Counsel, on behalf of Lead Plaintiff, respectfully requests that the Court reimburse Lead Plaintiff for its reasonable costs and expenses, amounting to $15,000 incurred in ably representing the interests of the proposed Settlement Class to achieve the favorable result reflected in the Settlement.

## CONCLUSION

For the reasons stated above, Lead Counsel respectfully requests that the Court award attorneys' fees of approximately $3,500,000.00, or 25% of the Settlement Fund, reimburse counsel's litigation expenses in the amount of $576,161.71, and award Lead Plaintiff $15,000 for lost wages and costs.

Case No. 3:19-CV-01372-JD

LEAD COUNSEL'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF COSTS AND EXPENSES TO LEAD PLAINTIFF -25-

Dated: March 14, 2024

**LEVI & KORSINSKY, LLP**

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins (admitted *pro hac vice*)
Gregory M. Potrepka (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Email: shopkins@zlk.com
Email: gpotrepka@zlk.com

*Counsel for Lead Plaintiffs the Ferraro Family
Foundation, Inc. and James L. Ferraro*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on March 14, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of all counsel of record.

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins