# Exhibit 4

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FERRARO FAMILY FOUNDATION, INC. and JAMES L. FERRARO, on behalf of themselves and all other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CORCEPT THERAPEUTICS INCORPORATED, JOSEPH K. BELANOFF, CHARLES ROBB, and SEAN MADUCK, <br><br> Defendants. | Case No. 3:19-CV-01372-JD |

**DECLARATION OF KENNETH N. KOTZ**

I, Kenneth N. Kotz, declare as follows:

1.     I have been retained by Levi & Korsinsky, LLP ("Counsel") in this matter to explain the methodology used to calculate aggregate damages and to provide and calculate aggregate damages based on certain per share damages scenarios that had previously been requested on a preliminary basis or, as I understand it, in connection with the proposed Settlement. Forensic Economics, Inc. ("Forensic Economics") previously provided Counsel preliminary calculations of aggregate damages for this matter under certain assumptions. I first provide my qualifications, compensation, and materials reviewed.

<u>**QUALIFICATIONS, COMPENSATION, AND MATERIALS REVIEWED**</u>

2.     I am Chief Operating Officer and a Vice President of Forensic Economics, located in Rochester, New York. I have been employed by Forensic Economics since 1999. I have consulted on issues pertaining to financial valuations, financial-economic analysis, and the analysis of stock price reactions to public information in securities fraud lawsuits during this time period. Forensic Economics has been retained by both plaintiffs and defendants in such securities cases.

3.     I hold an M.S. in Applied Economics (1999) from the University of Rochester's William E. Simon Graduate School of Business Administration. I hold an M.B.A. in Finance (1996) from the Loyola University Chicago Graduate School of Business, where I also received an Outstanding Student award. I have co-taught a corporate finance class and served as a teaching assistant at the University of Rochester. I have also served as a research assistant to the finance faculty of the Loyola University Chicago Graduate School of Business. I was awarded the CFA® Charter and the right to use the Chartered Financial Analyst® designation as authorized by the CFA Institute in 2006. My resume is attached to this Declaration as Exhibit 1.

1

4.     My compensation is based on the number of hours worked plus out-of-pocket expenses.  Forensic Economics is compensated at an hourly rate of $550 for my work on this Declaration.  My compensation is not contingent on an action or event resulting from the analyses, opinion, or conclusions in, or the use of, this Declaration.  I was assisted by employees of Forensic Economics, who worked under my supervision and direction in connection with this assignment. Forensic Economics' hourly rates for employees range from $200 to $675.

5.     For this Declaration, I relied on assumptions provided by Counsel as stated below, data regarding Corcept Therapeutics Incorporated's ("Corcept") common stock, market indexes and industry indexes obtained from Bloomberg, data regarding Corcept shareholdings and insider transactions obtained from Standard & Poor's Capital IQ platform and Corcept's filings with the U.S. Securities & Exchange Commission ("SEC"), data on call options on Corcept common stock from the Chicago Board Option Exchange's ("Cboe") DataShop platform, and interest rate data from U.S. Federal Reserve System.  I have attempted to cite in the text of this Declaration specific documents which I relied on in preparing this Declaration.

## AGGREGATE DAMAGES METHODOLOGY

6.     I have been asked to describe certain calculations of aggregate damages under Section 10(b) of the Exchange Act of 1934 and SEC Rule 10b-5 adopted thereunder (collectively, "Section 10(b)") under varying sets of assumptions.  Damages under Section 10(b) are generally calculated based on an "out-of-pocket" measure.  Damages are generally considered the artificial inflation present in the security on the date of purchase less the artificial inflation in the security on the date of sale, subject to certain legal limitations.[1]

---

[1] Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), an investor cannot recover more than the difference between the purchase price and the mean trading price of the

7.      Thus, the first step in calculating aggregate damages is to calculate the daily level of artificial inflation in the security in question.  Artificial inflation is measured based on the decline in Corcept's common stock due to curative disclosures.  Here, Plaintiff alleged two curative disclosures that affected Corcept's stock price – one on January 25, 2019 and one on February 1, 2019.[2]  A market model regression analysis was then run in order to isolate Corcept's company-specific stock price movements on these dates from general market and industry movements.  The analysis yielded a decline (net of market and industry movements) of $1.76 per share on January 25, 2019 and $1.22 per share on February 1, 2019.

8.      Previously, Plaintiff's Counsel requested that Forensic Economics calculate aggregate damages based on three scenarios: (i) assuming that 100% of both stock declines were used in the calculation of artificial inflation throughout the Class Period; (ii) 100% of the decline on January 25, 2019 was used in the calculation of artificial inflation throughout the Class Period; and (iii) 100% of the decline on January 25, 2019 and 25% of the decline on February 1, 2019.

9.      For purposes of this Declaration, I have also been asked to provide an aggregate damages estimate, considering only the January 25, 2019 corrective disclosure that I understand disaggregates certain information arguably unrelated to the alleged fraud from estimated damages.  Plaintiff's Counsel has asked me to assume that a range of 50% to 83% of the decline in Corcept's stock price on January 25, 2019 should be excluded from the damages estimate because it is unrelated to the allegations in this Action.  Counsel represented to me that these assumptions

stock during the 90-day "look-back" period.  *See* 15 U.S.C. § 78u-4(e)(1).  As discussed later, for purchases sold prior to the end of the Class Period, it was assumed that damages are limited to the difference between the purchase price and the sale price.

[2] Third Amended Complaint, ECF No. 127 filed December 21, 2020 (the "TAC"), ¶¶348, 350.

3

(relating in some way to Korlym's off-label marketing that may relate to Plaintiff's remaining allegations) were based on the following discovery to date:

- CW14 estimated that approximately 50% of Korlym prescriptions came from three physicians known to prescribe large volumes of Korlym off-label in exchange for honoraria payments.  TAC ¶392.

- According to the January 25, 2019 SIRF Report, of the 103 deaths reported since 2012, approximately 17, or 17%, Korlym was "used for [an] unknown indication," indicating off-label use.  TAC ¶322.

- The chart of Medicare Part D prescriptions by state supports the inference that at least 50% of Korlym prescriptions were the result of improper off-label marketing.  TAC ¶311.

- CW11 estimated that approximately 40% of Korlym prescriptions were the result of improper off-label marketing.

10.     I note that the range of percentages in the list above is 17% to 50%.  The following table provides each of the five scenarios for which I have been asked to calculate damages and the resulting per share decline used to calculate artificial inflation for each (ordered by declining amount of total artificial inflation, i.e., the sum of the price declines):

| | January 25, 2019 | | February 1, 2019 | |
|---|---|---|---|---|
| Scenario | % of Decline | Price Decline for Inflation | % of Decline | Price Decline for Inflation |
| 1 | 100% | $1.76 | 100% | $1.22 |
| 2 | 100% | $1.76 | 25% | $0.31 |
| 3 | 100% | $1.76 | 0% | --- |
| 4 | 50% | $0.88 | 0% | --- |
| 5 | 17% | $0.30 | 0% | --- |

11.     The second step in calculating aggregate damages is estimating the timing of purchases and sales of Corcept common stock.  Once calculated, damages are calculated based on the following formula:

4

Damages are equal to the number of shares purchased and sold multiplied by the damages per share, which is the lesser of:

(a) artificial inflation per share on date of purchase less artificial inflation per share on date of sale; and

(b) purchase price (here, the closing price) less the sale price, however, based on the PSLRA, for shares sold within 90 days following the last disclosure, the sale price will be set equal to the higher of the actual sale price (here, the closing price) and the rolling average price from the price impact of the last disclosure date through the date of sale and, for shares held as of 90 days after the last disclosure, the sale price will be set to the 90-day average price.[3]

12.     The timing for purchases and sales were estimated using a "multi-sector" model approach.[4]  For this approach, an "institutional model" is estimated and a trading model is used to estimate damages for the remaining "retail" volume.  An institutional trading model uses reported quarterly holdings data by institutional investors.[5]  For each institution the change in quarterly holdings is used to determine an institution's net purchases or sales within a quarter.  These net purchases or sales are then pro-rated on a daily basis based on daily volume (adjusted for insider

---

[3] Securities must also be held over a corrective disclosure to recover damages.  The start of the 90-day "look-back" period was set based on the last disclosure used in the artificial scenario (i.e., beginning on February 1, 2019 for Scenarios 1 and 2 and beginning on January 25, 2019 for Scenarios 3, 4 and 5).  In the initial preliminary analysis provided, the PSLRA limitation was applied based solely on rolling average prices and not the higher of the actual sale price and rolling average price during the 90-day period.  A later update was requested to match the terms of the Plan of Allocation in this matter, which implemented the higher of the actual sale price and the rolling average price on the date of sale for shares sold during the 90 days after the last disclosure. See Notice of Pendency of Class Action and Proposed Settlement, Final Approval Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, dated  January 26, 2024, p. 17.

[4] For example, see Marcia Kramer Mayer, "Best-Fit Estimation of Damaged Volume in Shareholder Class Actions: The Multi-Sector, Multi-Trader Model of Investor Behavior," NERA white paper, October 2020.

[5] The institutional data accounts for approximately 74% of Corcept's public float (shares outstanding less insiders plus short interest) during the Class Period based on end of quarter data points from September 30, 2017 to December 31, 2018 (ranging from approximately 71% - 78% with an average of 74%).

transactions and company repurchases, if any).  Thus, for each institution a series of daily purchases and sales is created.  These purchases and sales are then matched based on a standard share matching methodology.  For the aggregate damages calculations, both the "First-In-First-Out" ("FIFO") and the "Last-In-First-Out" ("LIFO") share matching methodologies were used.  Working in chronological order by sales, under FIFO (LIFO) a sale is matched to the earliest (most recent) purchase of shares (occurring prior to the sale).[6]

13.     Next, damages are estimated for "retail" investors that are not accounted for by the institutional data, which requires assumptions regarding relative trading propensities and proportion of float assigned to different trader groups, intraday trading percentage, and other assumptions used to create the requisite daily float and volume.  Among other assumptions, this model includes short interest in the calculation of float, an assumption for intraday trading of 60%, and the following assumptions for the trading model: 37.1% of the float are active traders that trade 8.56x more than the passive trader group.

14.     The following table provides the estimated aggregate damages for each scenario given the share matching assumption employed in the institutional model.

*in millions*

| Scenario | Jan. 25, 2019 % | Feb. 5, 2019 % | FIFO-Matched Institutional Damages + Retail | LIFO-Matched Institutional Damages + Retail |
|---|---|---|---|---|
| 1 | 100% | 100% | $185.2 | $161.4 |
| 2 | 100% | 25% | $138.7 | $121.4 |
| 3 | 100% | 0% | $120.3 | $105.4 |
| 4 | 50% | 0% | $63.5 | $55.8 |
| 5 | 17% | 0% | $22.1 | $19.5 |

---

[6] The methodologies are reversed in the case of a short sale (by matching the first (last) available short sale to the first cover purchase under FIFO (LIFO), working in chronological order by covering purchases).  If an institution sold short (i.e., had a negative balance of securities), these shares were matched but would not be considered to have any recoverable damages.

15.     In addition, I have been asked by Counsel to provide a previous estimate of aggregate damages for purchasers of call options on Corcept common stock that was based on Scenario 2. For this calculation, inflation was measured for each alleged disclosure date for each call option series using the Black-Scholes option pricing formula and adjusting Corcept's common stock price by the assumed price declines in Scenario 2. Next, aggregate damages were calculated by multiplying the measured inflation for each alleged disclosure by open interest in the call options (i.e., outstanding call option) as of the respective disclosure dates. This resulted in aggregate damages of less than $1 million.[7]

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 11th day of March 2024

Kenneth N. Kotz

---

[7] I note that this could be considered a "maximum" measure of damages given the inflation because it assumes all outstanding options were damaged and does not apply the PSLRA limitation on recoverable damages.

**Exhibit 1**                                                                                          **March 2024**


## KENNETH N. KOTZ, CFA


| Business Address: | Home Address: |
|---|---|
| Forensic Economics, Inc. | 85 Coral Way |
| 95 Allens Creek Road | Rochester, New York 14618 |
| Building 2, Suite 303 | (585) 241-3230 |
| Rochester, New York 14618 | |
| (585) 385-7440 | |
| (585) 385-7441 FAX | |
| ken@forensiceconomics.com | |


### Employment and Education

8/99-present    **Forensic Economics, Inc.**, Rochester, NY.
Chief Operating Officer (9/2023-present); Vice President (3/2005-present); Senior Economist (5/2000-3/2005); Consultant (8/1999-4/2000).  Consulting in financial-economic analysis in securities litigation and business disputes.

6/96-12/99    **M.S. in Applied Economics, Finance and Accounting**, William E. Simon Graduate School of Business Administration, University of Rochester, Rochester, NY.

9/97-12/99    **William E. Simon Graduate School of Business Administration, University of Rochester**, Rochester, NY.
Instructor and Teaching Assistant.

1994-1996    **M.B.A., Finance**, Loyola University Chicago, Chicago, IL.

1994-1996    **Loyola University Chicago**, Chicago, IL.
Research Assistant, Finance Department.

1995-1996    **Financial and Economics Strategies Corporation**, Chicago IL.
Research Assistant.

1991-1994    **Midwest European Publications, Inc.**, Evanston, IL.
Assistant Manager.

1986-1989    **B.A., History**, University of Pennsylvania, Philadelphia, PA.

**Exhibit 1**                                                          **March 2024**

## Publications

Automation versus intermediation: Evidence from treasuries going off the run (with M. Barclay and T. Hendershott), *The Journal of Finance*, vol. 61 no. 5, October 2006, 2395-2414.

## Working Papers

Stock price effects of changes in the accounting procedure set, October 1999.

IPO underpricing, information asymmetry, and dividend policy, June 1999.

Determinants of payout policy choice: Stock repurchases versus dividend initiations, October 1998.

The stock price reaction to shareholder proposals, June 1998.

The investment opportunity set and the stock price reaction to dividend changes, January 1998.

## Awards

CFA® charterholder, CFA Institute (2006).

Fellowship, William E. Simon Graduate School of Business Administration, University of Rochester (1996-1999).

Outstanding Student Award, Loyola University Chicago (1996).

Phi Beta Kappa, Loyola University Chicago (1996).

Graduate Scholarship, Loyola University Chicago (1994-1996).

**Exhibit 1**                                                                              **March 2024**

## Testimonial and Expert Report Experience

Lisa Wiley et al. v. Paysafe Limited et al. and John Paul O' Brien et al. v. Paysafe Limited et al. in the United States District Court Southern District of New York, Case Nos. 1:21-cv-10611-AJN-KHP and 1:22-cv-00567-AJN-KHP (Declaration, March 1, 2022).

Cobalt International Energy, Inc., et al. v. Illinois National Insurance Company, et al. in the District Court of Harris County, Texas, 125th Judicial District, Cause No. 2016-31648 (Report, December 10, 2021; Deposition May 5, 2022).

Angela Lewis et al. v. CytoDyn, Inc. et al. in the United States District Court Western District of Washington at Tacoma, Case No. 3-21-cv-05190-BHS (Declaration, July 29, 2021; Supplemental Declaration, September 3, 2021).

Megan Lundy et al. v. Ideanomics, Inc. et al. and Andrew Kim v. Ideanomics, Inc. et al. in the United States District Court Southern District of New York, Case Nos. 1:20-cv-04944-GBD-OTW and 1:20-cv-05203-GBD-OTW (Declaration, September 16, 2020).

George Hedrick Jr. et al. v. The Kraft Heinz Company et al., Iron Workers District Council (Philadelphia and Vicinity) Retirement and Pension Plan et al. v. The Kraft Heinz Company et al. in United States District Court Northern District of Illinois, Case Nos. 1:19-cv-01339 and 1:19-CV-01845 (Declaration, May 15, 2019; Supplemental Declaration, May 22, 2019; Second Supplemental Declaration, May 24, 2019).

Daniel Plaut et al. v. The Goldman Sachs Group, Inc. et al. in United States District Court Southern District of New York, Case No. 1:18-cv-12084-VSB (Declaration, March 4, 2019; Supplemental Declaration, March 11, 2019).

In the Matter of the Accounting by David Ott as Trustee of the Ott Living Trust Under Instrument Dated March 4, 1997 in State of New York, Surrogate's Court, County of Ontario, File No. 2014-264/A (Affidavit, January 29, 2018).

Movses Marjanian et al. v. Allied Nevada Gold Corp. et al. and Janet Martinez et al. v. Allied Nevada Gold Corp. et al. in United States District Court District of Nevada, Case Nos. 3:14-CV-0175-LRG-WCG and 2:14-cv-0650-JCM-VCF (Declaration, November 21, 2014).

Last Atlantis Capital LLC et al. vs AGS Specialist Partners et al. in the United States District Court Northern District of Illinois, Case Nos. 04 C 0397, 05 C 5600, and 05 C 5671 (Expert Report, June 16, 2014; Deposition, September 5, 2014).

George Pio et al. v. General Motors Company et al. in the United States District Court Eastern District of Michigan, Case No. 14-cv-11191-LVP-MKM (Declaration, June 16, 2014).

Brandon Muhammad et al. v. China Sky One Medical, Inc. et al. in the United States District Court Central District of California, Case No. 2:12-cv-02552-DMG-CW (Declaration, May 21, 2014).

**Exhibit 1**                                                                                    **March 2024**

<u>In Re Fannie Mae Securities Litigation</u> in the United States District Court District of Columbia, Consolidated Civil Action No. 1:04-CV-01639 (Declaration with Frank C. Torchio, October 11, 2013).

<u>Nancy George et al. v. China Automotive Systems, Inc. et al.</u> in the United States District Court Southern District of New York, Civil Action No. 11-7533 (Declaration, January 14, 2013; Deposition, February 12, 2013; Reply Declaration, April 8, 2013; Testimony at Hearing, May 30, 2013).

<u>Morad Godooshim et al. v. Qiao Xing Mobile Communication Company, Ltd. et al.</u> in the United States District Court Southern District of New York, Civil Action No.: 12 Civ. 9264 (JSR) (Declaration, May 3, 2013).

<u>Chris Basnett et al. v. Longwei Petroleum Investment Holding Ltd. et al., Jun Ma et al. v. Longwei Petroleum Investment Holding Ltd. et al., Charlie Muniz et al. v. Longwei Petroleum Investment Holding Ltd. et al., and Paul Howard et al. v. Longwei Petroleum Investment Holding Ltd. et al.</u> in the United States District Court Southern District of New York, Nos. 13 Civ. 00214 (HB), 13 Civ. 00229 (HB), 13 Civ. 00278 (HB), and 13 Civ. 00442 (HB) (Declaration, March 28, 2013).

<u>Lawrence Blitz et al. v. AgFeed Industries, Inc. et al. and Joseph Felcher et al. v. AgFeed Industries, Inc. et al.</u> in the United States District Court Middle District of Tennessee, Nashville Division, Nos. 3:11-cv-0992 and 3:11-cv-01184 (Declaration, January 16, 2012).

<u>Franz Schleicher et al. vs. Gary C. Wendt et al.</u> in the United States District Court Southern District of Indiana, Indianapolis Division, No. 02 CV 1332 TWP-TAB (Declaration, January 13, 2011).

<u>City of Monroe Employees' Retirement System et al. vs. The Hartford Financial Services Group, Inc. et al.</u> in the United States District Court Southern District of New York, Civil Action No. 10 cv 2835 (NRB) (Declaration, June 28, 2010).

<u>Harry Stackhouse et al. vs. Toyota Motor Corporation et al., Tom Mustric et al. vs. Toyota Motor Corporation et al., Kathryn A. Squires et al. vs. Toyota Motor Corporation et al., Robert M. Moss et al. vs. Toyota Motor Corporation et al., Philip Gelenberg et al. vs. Toyota Motor Corporation et al., and L. Patricia Sampoli et al. vs. Toyota Motor Corporation et al.</u> in the United States District Court Central District of California, Nos. 2:10-cv-00922-DSF-AJW, 2:10-cv-01429-DSF-AJW, 2:10-cv-01452-DSF-AJW, 2:10-cv-01911-DSF-AJW, 2:10-cv-02196-DSF-AJW, and 2:10-cv-02253-DSF-AJW (Declaration, April 19, 2010).

<u>EBC I, Inc. f/k/a eToys, Inc., by the Post-Effective Date Committee against Goldman, Sachs & Co.</u> in the Supreme Court of the State of New York, County of New York, Index No. 601805/02 (Expert Report, October 27, 2009; Deposition, January 7, 2010; Expert Rebuttal Report, February 8, 2010; Affidavit, April 14, 2010).

**Exhibit 1**                                                                                                    **March 2024**

Aekta Ben Patel et al. vs. Satyam Computer Services Ltd. et al., Hossein Momenzadeh et al. vs. Satyam Computer Services Ltd. et al., Cynthia Freeman vs. Satyam Computer Services Ltd. et al., Naveen Chander Jepu vs. Satyam Computer Services Ltd. et al., Bert H. Sturgis, II et al. vs. Satyam Computer Services Ltd. et al., Larry R. Pennington et al. vs. Satyam Computer Services Ltd. et al., James Hamblin et al. vs. Satyam Computer Services Ltd. et al., Hillel Raymon et al. vs. Satyam Computer Services Ltd. et al., Brian Faber et al. vs. Satyam Computer Services Ltd. et al, Taylor Jamrok et al. vs. Satyam Computer Services Ltd. et al., William M. Hebert et al. vs. Satyam Computer Services Ltd. et al., and Ashit M. Mehta et al. vs. Satyam Computer Services Ltd. et al. in the United States District Court Southern District of New York, Civil Action Nos. 1:09-cv-00093-BSJ-DFE, 1:09-cv-00161-CM, 1:09-cv-00330-BSJ, 1:09-cv-00337-BSJ, 1:09-cv-08353-BSJ, 1:09-cv-08488-BSJ, 1:09-cv-08491-VM, 1:09-cv-00512-BSJ, 1:09-cv-00569-LTS, 1:09-cv-00655-BSJ, 1:09-cv-01124-UA, and 1:09-cv-01789-UA (Declaration, March 26, 2009).

Jacksonville Police and Fire Pension Fund et al. v. American International Group, Inc. et al., James Connolly v. American International Group, Inc. et al., Maine Public Employees Retirement System et al. v. American International Group, Inc. et al., and Ontario Teachers' Pension Plan Board et al. v. American International Group, Inc. et al. in the United States District Court Southern District of New York, Civil Action Nos. 08 Civ. 4772 (RJS), 08 Civ. 5072 (RJS), 08 Civ. 5464 (RJS), and 08 Civ. 5560 (RJS) (Declaration, August 18, 2008).

Plumbers and Pipefitters Local 51 Pension Fund et al. vs. Darden Restaurants, Inc. et al. and Robert Kalkstein et al. vs. Darden Restaurants, Inc. et al. in the United States District Court Middle District of Florida, Orlando Division, Case Nos. 6:08-CV-00388-PCF-DAB and 6:08-CV-00507-GAP-DAB (Declaration, June 19, 2008; Supplemental Declaration, June 27, 2008).

Life Enrichment Foundation et al. against Merrill Lynch & Co., Inc. et al., Michael J. Savena et al. against Merrill Lynch & Co., Inc. et al., Gary Kosseff et al. against Merrill Lynch & Co., Inc. et al., Robert R. Garber et al. against Merrill Lynch & Co., Inc. et al., and James Conn et al. against Merrill Lynch & Co., Inc. et al. in the United States District Court Southern District of New York, Civil Action Nos. 07 Civ. 09633 (LBS), 07 Civ. 09837 (LBS), 07 Civ. 10984 (LBS), 07 Civ. 11080 (LBS), and 07 Civ. 11626 (LBS) (Declaration, January 17, 2008).

Eugene Kratz vs. Beazer Homes USA, Inc. et al., New Jersey Building Laborers Pension Fund vs. Beazer Homes USA, Inc. et al., and IBEW Local 1579 Pension Plan vs. Beazer Homes USA, Inc. et al. in the United States District Court Southern District of Georgia, Civil Action Nos. 1:07-CV-00725, 1:07-CV-1139, and 1:07-CV-1151 (Declaration, June 15, 2007; Supplemental Declaration, July 2, 2007).

**Exhibit 1**                                                                    **March 2024**

Tully Nadel et al. against Comverse Technology Inc. et al., David Thomas et al. against
Comverse Technology, Inc. et al., and Lance Moore et al. against Comverse Technology,
Inc. et al. in the United States District Court Southern District of New York, Civil Action
Nos. 06 Civ. 3190 (LAK), 06 Civ. 3445 (LAK), and 06 Civ. 4418 (LAK) (Declaration,
July 6, 2006).

Anthony Caiafa et al. against Comverse Technology Inc. et al. and James M. Gorman et al.
against Comverse Technology, Inc. et al. in the United States District Court Eastern
District of New York, Civil Action Nos. 06 CV 1825 (NGG) and 06 CV2738 (NGG)
(Declaration, July 6, 2006).