# Exhibit 5

# Ferraro Family Foundation Inc. v. Corcept Therapeutics, Inc., 19-cv-01372-JD

## HEARING ON LEAD PLAINTIFF'S MOTIONS FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND AN AWARD OF ATTORNEYS' FEES AND EXPENSES

June 6, 2024



# MAXIMUM RECOVERABLE DAMAGES LIFO

| (in millions) | Survived Motion to Dismiss? | Total Estimated Damages | Settlement | Net Recovery[3] | % Total Recovery | % Net Recovery | Damaged Shares | Gross Recovery Per Share | Net Recovery Per Share |
|---|---|---|---|---|---|---|---|---|---|
| January 25, 2019 SIRF Report[1] | ✔ | $105.4 | $14.0 | $9.9 | 13% | 9% | 65.5 | $0.21 | $0.15 |
| January 31, 2019 Earnings Report[2] | ✘ | $161.4 | $14.0 | $9.9 | 9% | 6% | 68.4 | $0.20 | $0.14 |

[1] Represents damages estimate for only the January 24, 2019 corrective disclosure.
[2] Represents damages estimate with both corrective disclosures included.
[3] Represents recovery net of Attorneys' Fees of 25% ($3,500,000), expenses of $576,162 and Plaintiff reimbursement of $15,000.



1

# MAXIMUM RECOVERABLE DAMAGES FIFO

| (in millions) | Survived Motion to Dismiss? | Total Estimated Damages | Settlement | Net Recovery[3] | % Total Recovery | % Net Recovery | Damaged Shares | Recovery Per Share | Net Recovery |
|---|---|---|---|---|---|---|---|---|---|
| January 25, 2019 SIRF Report[1] | ✔ | $120.3 | $14.0 | $9.5 | 12% | 8% | 74.3 | $0.19 | $0.13 |
| January 31, 2019 Earnings Report[2] | ✘ | $185.2 | $14.0 | $9.5 | 8% | 5% | 77.2 | $0.18 | $0.12 |

[4] Represents damages estimate for only the January 24, 2019 corrective disclosure.
[5] Represents damages estimate with both corrective disclosures included.
[6] Represents recovery net of Attorneys' Fees of 25% ($3,500,000), expenses of $576,162 and Plaintiff reimbursement of $15,000.



2

# ESTIMATED DAMAGES AFTER DISAGGREGATION

| Total Estimated Disaggregated Damages – Jan. 25, 2019 disclosure only (in millions) | Settlement | Net Recovery | % Total Recovery | % Net Recovery |
|---|---|---|---|---|
| $22.1m to $63.5m | $14.0 | $9.9 | 22% to 63.3% | 16% to 45% |



3

# ESTIMATED CLAIMS RATE LIFO

| | Total Estimated Damaged Shares (in millions) | Estimated Damaged Shares Recovering in Settlement (in millions) | % Estimated Damaged Shares Recovering in Settlement | Estimated Institutional Ownership |
|---|---|---|---|---|
| January 25, 2019 | 65.5 | 48.4 | 74% | 60% |
| January 31, 2019 | 68.4 | 51.1 | 75% | 58% |

LEVI&KORSINSKYLLP 4

# ESTIMATED CLAIMS RATE FIFO

| | Total Estimated Damaged Shares (in millions) | Estimated Damaged Shares Recovering in Settlement (in millions) | % Estimated Damaged Shares Recovering in Settlement | Estimated Institutional Ownership |
|---|---|---|---|---|
| January 25, 2019 | 74.3 | 48.4 | 65% | 65% |
| January 31, 2019 | 77.2 | 51.1 | 66% | 63% |

LEVI&KORSINSKYLLP  5

## RISKS OF CONTINUED LITIGATION

➢ **DAMAGES AND LOSS CAUSATION**

➢ **FALSITY**

➢ **SCIENTER**

➢ **CLASS CERTIFICATION CHALLENGES**

LEVI&KORSINSKYLLP 6

# DAMAGES
# and
# LOSS
# CAUSATION

## The SIRF Report Contained Entirely Public Information and Concerned Potentially Confounding Disclosures Unrelated to Off-Label Marketing

- The Court previously held the SIRF Report contained entirely public information.

- Some of the information in the SIRF Report was, arguably, unrelated to off-label marketing (Plaintiff's Br. at 13-14). For example:
  - ➤ "The FDA's risk assessment and risk mitigation review for this study did conclude that Korlym's trial design was flawed without the testing of an approved comparator drug…."

  - ➤ "In March 2015 Corcept withdrew its application for Corluxin (a renamed Korlym)" in Europe, citing 'strategic business reasons' for ending the process."

  - ➤ There were "103 deaths reported for Korlym since 2012."



7

# FALSITY

## Statements that Corcept's Marketing Materials Were On-Label Were True

(Plaintiffs' Br. at 14-15).

- While Plaintiff argued Corcept's marketing materials contained implicit off-label marketing messages by inclusion of case studies using Korlym off-label, none produced in discovery explicitly instructed Corcept sales personnel to prescribe Korlym off-label

- There is no specified testing regimen for diagnosing Cushing's. It is within the Doctor discretion to decide which tests to run, to decide whether to run multiple tests (and how many), and whether to then prescribe Korlym.

- Evidence to date showed Corcept sent its marketing materials to the FDA, which never objected to them as being off-label.

- Defendants argue Hypercortisolism (used in Corcept's marketing materials) and Cushing's Syndrome are the same.



8

## SCIENTER

**There is No Evidence Defendants Instructed Corcept Employees to Market Korlym Off-Label**

(Plaintiffs' Br. at 14-15)

- There is no documentary evidence to date that any individual defendant instructed Corcept employees to engage in off-label marketing.

- There is some evidence that Corcept executives instructed employees to keep Korlym marketing to on-label uses.

- There is currently no evidence that any physician complained to any defendant about off-label marketing.

LEVI&KORSINSKYLLP

9

**CLASS CERTIFICATION CHALLENGES**

## Whether Corcept Securities Traded In an Efficient Market

(Plaintiffs' Br. at 15)

- The alleged statements were too generic to impact the price of Corcept's stock.

- Few, if any, analysts commented on the alleged false statements or the SIRF Report, undermining materiality, loss causation and price impact.

- Stock price reaction.



10

## SIGNIFICANT ADDITIONAL EXPENSE AND DELAY IN PROCEEDING

### Estimated Costs of Litigation are Significant

(Plaintiffs' Br. at 16)

- Depositions: 58 remaining depositions to take, of which at least 28 would be take in-person.
- Expert Discovery: Multiple experts would be needed, including, for:
  - (i) Cushing's Syndrome
  - (ii) FDA marketing regulations
  - (iii) Market efficiency
  - (iv) Damages and Loss Causation
- Briefing motions to compel, class certification and summary judgment.
- Trial would have been complex and confusing for jurors



LEVI&KORSINSKYLLP 11